[No. 37127. Department One. November 19, 1964.]

RUTH M. WORTHINGTON, *Respondent*, v. CHARLES W. CALDWELL et al., *Appellants*.*

*Reported in 396 P. (2d) 797.

*Kahn, Horswill, Keller, Rohrback, Waldo & Moren,* for appellants.

*Bianchi & Tobin,* by *Gordon R. Tobin* and *Phillip Offenbacker,* for respondent.

HALE, J.—A common, garden-variety, collision between two automobiles at an uncontrolled right-angled intersection in Seattle brings up a number of unlikely problems ranging from *additur* to *verdict* and touches upon serious procedural questions in between.

On the bright, clear morning of July 18, 1961, Ruth M. Worthington, with two children in her car, drove south on Densmore Avenue. As she passed through the 82nd Street intersection, the front end of defendant Dorothy Caldwell's car, going west on 82nd Street, struck her car on its left side near the rear wheels. Eighty-second Street and Densmore Avenue, each being 25 feet wide and unobstructed, intersected to form a 25-foot square, free of traffic signals or control devices and governed by a 25-mile-per-hour speed limit. The Caldwell car laid down 24 feet of skidmarks, the Worthington car none. Plaintiff Worthington had the right of way; defendant Dorothy Caldwell, at the moment, operated her car under a statutory mandate to look out for and yield the right of way to vehicles on her right. RCW 46.60.150.

Mrs. Caldwell says that she stopped her car before entering the intersection at a point about where the sidewalk would extend across 82nd; she looked to her left and right, and, seeing no moving vehicles on Densmore, drove across the intersection. When she first saw the plaintiff's car, she says it was coming slowly towards her from her right about 35 feet away. "She was coming at an angle toward the intersection," said Mrs. Caldwell. Mrs. Caldwell slammed on her brakes and skidded for 24 feet into the side of plaintiff's car.

Plaintiff ascribed serious injuries and special medical expenses, exceeding $3,000, to the accident. Defendants, conversely, attributed most of plaintiff's medical symptoms and expenses to an earlier automobile accident and to a prior industrial injury. The jury apparently accepted defendants' version of the damages for it returned a plaintiff's verdict awarding her $2,500 for "personal injuries, medical expenses and loss of earnings" and an additional $50 for damage to her automobile. Plaintiff, before judgment, moved for an *additur* on the verdict, or, in the alternative, a new trial, citing eight of the nine grounds prescribed

in Rule of Pleading, Practice and Procedure 59.04W, RCW Vol. 0, 4 Orland's Wash. Prac. 449, and RCW 4.76.030.[1]

Granting this motion, the trial court awarded *additur*, fixed total damages at $8,500, and allowed the defendants to accede thereto or in the alternative be subject to a new trial. In accordance with Rule of Pleading, Practice and Procedure 59.04W, *supra*, the court cited as specific reasons for this relief (1) damages so inadequate as to shock the court's conscience, (2) speculation and uncertainty in the defendants' medical evidence, (3) denial of substantial justice through defendants' evidence on direct examination that plaintiff had received $4,000 in settlement on a previous injury, and (4) that the verdict indicated prejudice in the jury derived from some unspecified source. Defendants declined the $8,500 *additur* judgment, and, from an order granting a new trial bring this appeal urging that judgment be entered upon the $2,500 verdict.

■ If our review were limited to the principal ground upon which the trial court granted a new trial—inadequacy of the verdict—we would be obliged to reverse and order the verdict reinstated because our view of the proof shows substantial evidence from which the jury could have made up the verdict. Two doctors, called by the defendants, attributed only a minor portion of plaintiff's symptoms, pain and medical expenses to the accident in issue, and related the greater part of her damages to her previous accidents and to physical and emotional symptoms preexisting the accident. Although after the accident plaintiff incurred hospital expenses of $2,181.30 and other bills for medical treatment to bring the total of special damages by reason of medical costs to well over $3,000, the testimony of these two medical experts supplied sufficient evidence to support the $2,550 verdict. This testimony gave the jury substantial evidence from which it could have

---

[1]Respondent omitted only Rule of Pleading, Practice and Procedure 59.04W (6), relating to excessive or unreasonably slight recovery in action upon contract or for injury or detention of property. All of the other eight causes for which a new trial may be granted were set forth in the motion.

found both minor physical injury proximately resulting from the impact and minor damages for medical expenditures, pain, suffering and loss of income caused by the accident. Questions of damages should be decided by the jury and, once the jury renders its verdict, a statutory presumption exists that they have found correctly. *Martin v. Foss Launch & Tug Co.*, 59 Wn. (2d) 302, 367 P. (2d) 981. Nor should the trial court substitute its judgment for that of the jury as to the amount of damages. *Durkan v. Leicester*, 62 Wn. (2d) 77, 381 P. (2d) 127; *Trosper v. Heffner*, 51 Wn. (2d) 268, 317 P. (2d) 530; *Weihs v. Watson*, 32 Wn. (2d) 625, 203 P. (2d) 350.

Were there no serious errors in the trial of the case, errors which we could readily say would have no effect on the jury's view of the damages, we would—confirming the jury's full constitutional scope to assess damages—resolve all issues of law in the case by affirming the verdict and ordering judgment thereon. We wish the case were here on so uncomplicated a premise. *Cf. Durkan v. Leicester, supra.*

But, before verdict and after, respondent called the trial court's attention and took exception to several claimed errors, urging them here as reasons to sustain the order for a new trial. Standing now in the role of a prevailing party to uphold the new trial, respondent may now rely, we believe, on all claimed errors and points of law sufficiently submitted to the trial court. We take it to be the rule that, where a new trial is granted on specific grounds or for particular reasons, the Supreme Court may consider any grounds or reasons properly presented to the trial court by the party seeking to sustain the new trial, and the court of review should affirm the new trial on any tenable grounds so presented to the trial court, whether or not such ground was cited by the trial court as the reason for the granting of a new trial. *State v. Williams*, 64 Wn. (2d) 842, 394 P. (2d) 693; *State v. Maxfield*, 46 Wn. (2d) 822, 285 P. (2d) 887; *Larson v. Seattle*, 25 Wn. (2d) 291, 171 P. (2d) 212; and *Rochester v. Seattle, Renton & Southern R. Co.*, 75 Wash. 559, 135 Pac. 209.

In studying the question of whether errors at trial would be likely to disparage the plaintiff's evidence as to her damages, and before going into the specific errors claimed by her, we point out that the evidence showed her to have suffered two serious accidents prior to the collision of July 18, 1961, in issue. She had been hospitalized for 2 weeks in 1957 because of injuries to her lower back received in a head-on collision. On March 3, 1961, she incurred a herniated disc requiring spinal surgery on April 25, 1961, as the result of an accident while on the job. The accident at issue here, July 18, 1961, occurred only 3 months after the spinal surgery necessitated by plaintiff's industrial accident. This brings us to the first claim of error urged by respondent to sustain the order for a new trial.

Dr. Harry L. Leavitt, an orthopedic surgeon called as a witness by defendants, took a lengthy medical history from the plaintiff when he examined her on behalf of defendants. In relating this history to the jury, he said:

". . . She stated while living in Iowa, in 1957, she was in a head-on collision while driving a car. She was thrown forward and her chest was bruised, and she had pain in her lower back and aching in her thighs. She was hospitalized for fourteen days in traction. This helped her. She also had physical therapy treatments. She returned to work as a cook, which she had been doing before, about three months after the accident. *She states she was perfectly all right, and the case was settled with the assistance of an attorney for $4,000.00 in November of 1958.*" (Italics ours.)

The court denied plaintiff's motion for a mistrial based on this evidence of prior monetary settlement, but, following lengthy colloquy and recess, and after the witness had been excused, instructed the jury that "Any reference that there may have been a claim for an automobile accident in Iowa relating to this plaintiff should be completely disregarded by you," and further told the jury that such evidence was stricken from the record and had no bearing on the case.

■ Proof of the amount of money received in settlement for personal injuries incurred in an automobile

accident 3 years earlier was clearly irrelevant and immaterial as to the injuries sustained then and now, and, thus, had no probative value. While it might be said that the physical injuries sustained by plaintiff in 1957 were possibly relevant in proof of her physical condition before the accident of July 18, 1961, surely the amount of money awarded in settlement could not be deemed pertinent. The error in presenting this evidence, it could well be argued, went to the heart of the jury's view of damages and, when considered in pari materia with other errors, may well have affected the jury's judgment as to the extent of plaintiff's injuries. See *Wilson v. Garrett*, 92 Ga. App. 820, 90 S.E. (2d) 74 (1955).

At the close of the evidence, respondent moved the court to direct a verdict for plaintiff on the issue of liability, urging that the right of way in the plaintiff plus want of proof of contributory negligence warranted such a ruling. The trial court refused the directed verdict and thereupon instructed the jury on negligence and contributory negligence and on many aspects of the rules of the road, including the duty to drive to the right of the center of the highway, deception on the part of the favored driver by which he loses the right of way, sudden emergency, and the duty to see what is there to be seen, together with the general instruction requiring both parties to drive in a manner and at a speed no greater than prudent under conditions then existing.

We think that the plaintiff made a strong case for a directed verdict. Defendant driver first saw plaintiff's car entering the intersection at a point where an extension of the sidewalk would cross the street; all of her impressions thereafter, compressed into a space-time sequence during which both vehicles traveled less than 35 feet, could hardly be said to constitute more than a scintilla of evidence on the question of contributory negligence. Hence, we find no proof of negligence on the part of plaintiff and conclusive proof of defendant driver's failure to yield the right of way.

■ The facts of the case do not even remotely approach the elements prescribed by us as a predicate to the loss of right of way by the favored driver under the doctrine of deception, for, as we said in *Mondor v. Rhoades*, 63 Wn. (2d) 159, 385 P. (2d) 722, an opinion not yet published at the time of trial, deception may shift the right of way to the driver on the left at uncontrolled intersections only when

" . . . the driver on the left is able to demonstrate that the favored driver so wrongfully and negligently operated his car as to create a deception tantamount to an entrapment, a deception of such marked character as to lure a reasonably prudent driver into the illusion that he has a fair margin of safety in proceeding into the intersection and on through it. If the behavior of the car and driver on the right would not deceive the reasonably prudent driver on the left to such an extent as to entrap him, then the disfavored driver has failed to yield the right of way. . . ."

See, also, *Sanders v. Crimmins*, 63 Wn. (2d) 702, 388 P. (2d) 913; *Chavers v. Ohad*, 59 Wn. (2d) 646, 369 P. (2d) 831, and the specially concurring opinion per Rosellini, J.

Under the *Mondor* rule, a directed verdict in favor of the plaintiff should have been granted on the issue of liability. Had this been done, the instructions governing rules of the road and prescribing the requirements for compliance with the traffic laws would have been surplusage and, therefore, not given, thus eliminating all extraneous issues.

■ We recognize that juries will be deemed to have understood, followed and applied the court's instructions (*State v. Ingle*, 64 Wn. (2d) 491, 392 P. (2d) 442, *State v. Costello*, 59 Wn. (2d) 325, 367 P. (2d) 816; and *Traverso v. Pupo*, 51 Wn. (2d) 149, 316 P. (2d) 462), a principle particularly pertinent here. Giving effect to this rule, then, that the jury gave heed to the instructions, we would conclude that, where one party is entitled to a verdict under the law, the giving of numerous instructions, under which the jury may weigh all of the evidentiary minutiae from which liability or exoneration derives, prob-

ably affects the jury in deciding the distinctly separate issue of damages.

Thus, as in this case, where liability has been established as a matter of law, keeping it in issue under the whole instructional spectrum on the subject quite probably affected the jury's view on quantum of damages. Our study of the court's charge to the jury makes this clear. The court instructed the jury on the doctrine of deception under the rationale of *Martin v. Hadenfeldt*, 157 Wash. 563, 289 Pac. 533, which places the duty to exercise ordinary care in avoiding collisions at intersections on both drivers; the court gave the jury the classic definition of sudden emergency — albeit making it clear it benefits the non-negligent party placed in peril by the negligent party. The trial court likewise told the jury that violation of a statute or ordinance is negligence as a matter of law; it defined negligence and contributory negligence and placed the burden of proof upon the declarant thereof; and it further instructed that one is charged with seeing those objects he would have seen in the exercise of reasonable care. To these, the court added the instruction that one has the right to assume others will obey the traffic laws, with the further admonition that all persons must drive in a careful manner at a speed no greater than reasonable and prudent at the place of operation. Then, when to these instructions the court added the instruction on the duty to drive on the right of the center of the street, and to assume that others will obey the law, we have the probability that the jury may well have extended the uncertainty engendered by these instructions pertaining to liability over into the field of damages in a kind of tacit, ad hoc application of the doctrine of comparative negligence. We say this as a likelihood, knowing that in this frame of references, we deal not in certainties but in probabilities and possibilities only.

Plaintiff, under the law, was entitled to a verdict in her favor for such damages as were proved by a preponderance of the evidence to have been proximately caused by the impact. Defendants, under the law, were entitled to a ver-

dict reflecting damages no greater — if any — than proximately resulted from the accident. There the issues of fact should have begun and ended. Instead, comprehensive instructions covering nearly every aspect of the law relating to accidents at uncontrolled intersections cloaked the issue of liability in uncertainty and implied thereby that the parties were equal contenders on that point, whereas the plaintiff had already scored and should have been allowed a decisive victory on this crucial issue.

We have covered the question of discretion involved in the granting or denying of new trials in *Coleman v. George*, 62 Wn. (2d) 840, 384 P. (2d) 871:

"An order granting or denying a new trial will not be reversed except for an abuse of discretion; this principle being subject to the limitation that, to the extent that such an order is predicated upon rulings as to the law, no element of discretion is involved; and a much stronger showing of an abuse of discretion will ordinarily be required to set aside an order granting a new trial than one denying it. *O'Brien v. Seattle*, 52 Wn. (2d) 543, 327 P. (2d) 433; *Johnson v. Howard*, 45 Wn. (2d) 433, 275 P. (2d) 736."

A short time ago, we reiterated the principle in *Cyrus v. Martin*, 64 Wn. (2d) 810, 394 P. (2d) 369.

We therefore conclude that the record discloses two grounds, *inter alia*, upon which the order for a new trial could properly have been granted, (1) error in law occurring at the trial and excepted to at the time and (2) that substantial justice was not done. Rule of Pleading, Practice and Procedure 59.04W (8) and (9), RCW Vol. 0; 4 Orland's Wash. Prac. 449.

Affirmed.

HILL, ROSELLINI, and HUNTER, JJ., concur.

CUSHING, J.† (dissenting)—The holding in this case appears to be inconsistent with *Coleman v. George*, 62 Wn. (2d) 840, 384 P. (2d) 871.

January 19, 1965. Petition for rehearing denied.

---

†Judge Cushing is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.