[No. 356-3.   Division Three.   April 5, 1972.]

JOHN BERRY et al., *Appellants*, v. CLARENCE DUMDAI *et al.*, *Respondents*.

*David E. Williams* (of *Critchlow, Williams, Ryals & Schuster*), for appellants.

*Hugh B. Horton* (of *Horton, Wilkins & Horton*), for respondents.

EVANS, J.—This is an action for personal injuries received by plaintiff Huldah Berry in an automobile accident on a 4-lane bridge which spans the Columbia River between

Pasco and Kennewick. Plaintiff Mrs. Berry was proceeding south in the outside lane. Defendant Dumdai was ahead of her, also proceeding south in the inside lane. Plaintiff alleged that defendant negligently turned in front of her car without warning or notice and crowded her into a guardrail. Defendant alleged that plaintiff negligently failed to keep her vehicle under control and negligently turned her vehicle into the guardrail.

Both issues—negligence and contributory negligence— were submitted to the jury. The jury returned a verdict for plaintiff in the sum of $2,500.

Plaintiff seeks a new trial, contending it was error to refuse her motion for a directed verdict and to submit to the jury the issue of contributory negligence. We agree.

The first question presented is whether the motion for directed verdict was timely. During the course of the trial plaintiff submitted proposed instructions, including an instruction on the defense of contributory negligence. The testimony of both parties was concluded before noon of the third day of trial. Plaintiff did not at that time move for a directed verdict. During the noon recess the court prepared and assembled instructions. Following recess plaintiff made an oral motion for a directed verdict. In response the trial court stated:

> Actually, I would say that I wish this motion had been made sooner, before we got the instructions together, because on the basis of the testimony it would seem to me that the defendant probably should be found to be negligent as a matter of law. Mrs. Berry's car had to be there; and he just never saw it; and he admits it. I don't see how you can interpret it any other way . . .

The court declined to direct a verdict for plaintiff and submitted the defense of contributory negligence, giving as its reason that the motion was untimely and no proposed instruction for a directed verdict had been submitted by plaintiff. Following this ruling plaintiff took exception to the court's instruction on contributory negligence.

■ We are not advised by either counsel as to any rule

or case law requiring that a motion for directed verdict must be made within a specified time following the close of the evidence. Undoubtedly plaintiff's delay in moving for a directed verdict until after the noon recess caused the trial judge some inconvenience, but since the motion was made before taking exceptions to the instructions, we find the motion was timely. Furthermore, the fact that the motion, when made, was oral and not in writing is immaterial. Although it is better practice to present a motion for directed verdict in writing, it is not required under the rules and an oral motion is sufficient. *See Cortez v. Life Ins. Co. of North America,* 408 F.2d 500 (8th Cir. 1969), involving the construction of a federal rule similar to our CR 50. We are of the opinion plaintiff's motion for a directed verdict should have been considered by the trial court.

■ We are of the further opinion that plaintiff was entitled to a directed verdict. There was substantial evidence that defendant Dumdai caused the accident by changing lanes in front of Mrs. Berry without warning or notice, thereby forcing her into a guardrail. Dumdai testified that he looked before turning but did not see Mrs. Berry's car, yet it was there to be seen. There is no evidence that Mrs. Berry was speeding. Mr. Dumdai's testimony that she must have been speeding is based upon pure speculation. He did not see her car until after it had hit the guardrail and was traveling across the 4-lane highway where it hit the opposite guardrail. We are unable to find any evidence to justify submitting the issue of contributory negligence to the jury.

In view of our conclusion that plaintiff was entitled to a directed verdict the question then becomes: Since plaintiff recovered a favorable verdict, is she now entitled to a new trial?

Defendant contends this question was answered in the negative in the recent case of *Cowan v. Jensen,* 79 Wn.2d 844, 846, 490 P.2d 436 (1971), where the court stated:

The jury returned a verdict in favor of plaintiff and,

therefore, plaintiff suffered no harm by the failure of the court to direct a verdict on the issue of liability.

Plaintiff, on the other hand, relies upon the earlier case of *Worthington v. Caldwell*, 65 Wn.2d 269, 276-77, 396 P.2d 797 (1964), where the court stated:

[W]here one party is entitled to a verdict under the law, the giving of numerous instructions, under which the jury may weigh all of the evidentiary minutiae from which liability or exoneration derives, probably affects the jury in deciding the distinctly separate issue of damages.

While the above quotations from *Cowan* and *Worthington* appear to be in conflict, the two cases are distinguishable.

In *Cowan* the contention of appellant was that uncontroverted evidence established he was entitled to $900 damages, whereas the jury award was $700. The court affirmed the order of the trial court denying a new trial upon the basis that the jury award was within the range of evidence as to damages. The court was not called upon to decide if instructions erroneously given on liability affected the jury's consideration of the amount of damages.

*Worthington* affirmed the order of the trial court granting a new trial. The decision turned on the court's conclusion that the jury award, although within the range of evidence as to damages, probably was affected by instructions erroneously given on liability. In this regard the court stated, at page 277:

[W]here liability has been established as a matter of law, keeping it in issue under the whole instructional spectrum on the subject quite probably affected the jury's view on quantum of damages.

After summarizing the number of instructions on liability submitted to the jury the court concluded by saying, at page 277:

[W]e have the probability that the jury may well have extended the uncertainty engendered by these instructions pertaining to liability over into the field of damages in a kind of tacit, ad hoc application of the doctrine of comparative negligence. We say this as a likelihood,

knowing that in this frame of references, we deal not in certainties but in probabilities and possibilities only.

■ In the instant case, as in both *Cowan* and *Worthington,* the jury award was within the range of evidence on damages. That evidence ranged from no damages whatever, to evidence that plaintiff suffered permanent brain damage as a proximate result of the accident.

The court's charge to the jury required them to consider not only the question of plaintiff's contributory negligence, but also nearly every aspect of the law relating to the duties imposed upon both drivers. As stated in *Worthington,* at pages 277-78:

Plaintiff, under the law, was entitled to a verdict in her favor for such damages as were proved by a preponderance of the evidence to have been proximately caused by the impact. Defendants, under the law, were entitled to a verdict reflecting damages no greater—if any—than proximately resulted from the accident. There the issues of fact should have begun and ended. Instead, comprehensive instructions covering nearly every aspect of the law relating to accidents at uncontrolled intersections cloaked the issue of liability in uncertainty and implied thereby that the parties were equal contenders on that point, whereas the plaintiff had already scored and should have been allowed a decisive victory on this crucial issue.

We find the rationale of *Worthington* applies in the instant case and is controlling.

Reversed, and remanded for a new trial on the issue of damages only.

MUNSON, C.J., and GREEN, J., concur.

Petition for rehearing denied May 8, 1972.

Review denied by Supreme Court June 21, 1972.