Debra LARSEN, Plaintiff and Appellant,

v.

Melinda JOHNSON, Defendant and Appellee.

No. 960748–CA.

Court of Appeals of Utah.

May 14, 1998.

Terry M. Plant, Salt Lake City, for Appellant.

Andrea C. Alcabes, Salt Lake City, for Appellee.

Before DAVIS, P.J., and BILLINGS and GREENWOOD, JJ.

## OPINION

DAVIS, Presiding Judge:

Plaintiff Debra Larsen appeals the jury's verdict finding defendant Melinda Johnson negligent in an accident involving the two parties, but concluding that defendant's negligence was not the proximate cause of plaintiff's injuries. Plaintiff argues the trial court committed reversible error by admitting evidence of plaintiff's prior personal injury lawsuit and the amount of that lawsuit's settlement. We affirm.

## FACTS

This lawsuit arose out of a May 12, 1993, rear-end collision in which defendant's Subaru struck plaintiff's Suburban at a very low speed. After impact, plaintiff testified that she turned to catch her young daughter who was falling off the back seat. Plaintiff sat in her seat for either "seconds or minutes," and she testified that she felt no "immediate sensation of pain." Plaintiff and defendant then exited their vehicles and looked for damage but could find none. Again, plaintiff testified that she felt fine.[1] Upon plaintiff's return home, her husband discovered damage to the rear bumper of the Suburban and repaired it for forty-five dollars.

Later that afternoon, plaintiff felt "soreness and aching" in her back. During that week, plaintiff "got stiff and sore and had a lot of aching." Over the next couple of months, plaintiff's back pain continued to worsen. During this period, plaintiff resumed seeing Dr. Reed Fogg, who had treated her for back injuries due to a prior automobile accident.

Plaintiff had been involved in a car accident in November 1988 wherein the vehicle in which she was riding as a passenger was rear-ended while she was twisted in her seat. In that accident, plaintiff believed the vehicle that struck her vehicle was traveling about

---

1. On direct examination, plaintiff explained:
   Actually, I didn't ask her what had happened, but what she did say after she asked me, are you okay, and is your daughter all right, we looked at the car. She stated, we were both bent over—we really weren't bent over, we just kinda [sic] looked at the bumpers and I did say, I explained to her, I said, you know, I was in an automobile accident not that long ago and I had extensive surgery, *I really feel like I'm all right. I really fell [sic] like I'm fine.* But it is a concern to me.
   (Emphasis added.)

thirty miles per hour, and the force of the impact pushed plaintiff's vehicle into a vehicle ahead. As a result, plaintiff suffered from more than four years of lower back pain and underwent a lengthy course of treatment with numerous medical providers and multiple medical procedures. Ultimately, in December 1991, Dr. Fogg performed fusion surgery on plaintiff's back.

Following back surgery, plaintiff had a significant recovery period with associated limitation of activities and periodic setbacks as she increased her activities. Dr. Fogg stated that, at this time, plaintiff would probably have a permanent impairment rating of about fifteen to twenty percent. Shortly before the second accident, Dr. Fogg found plaintiff to be doing extremely well and released her from his care.[2]

Dr. Fogg testified that the accident at issue here,

> even though it really did not seem to be significant, she was in a big vehicle and she was wearing her seat belt, has somewhat stirred up the tissue to the degree where I have an impossible way of getting her back to the level of functioning that she was ... back when I released her.

However, Dr. Fogg also testified that plaintiff's pain pattern before the May 1993 accident was very complex and made diagnosis very difficult. Following this accident, he could neither determine the source of plaintiff's pain nor find an objective explanation for the pain.

Plaintiff's biochemical and accident reconstruction expert, Dr. Paul France, testified that the force resulting from the May 1993 rear-end impact alone was insufficient to cause her injury. He further stated that plaintiff's turning and rotating to try and catch her daughter, who was falling from her standing position on the back seat, could have been the sole cause of plaintiff's injury.

Plaintiff testified at trial that the impact from the rear-end collision caused her to lean back and then forward in her seat. Plaintiff testified, she then turned to try and catch her young daughter who was falling off the back seat. Plaintiff then just sat in her seat. Plaintiff, however, on several occasions before trial, offered a different rendition of her actions after impact. Plaintiff testified in her deposition that after she felt the jolt from behind, her body went back and forward and that afterward, she sat in her seat for either "seconds or minutes." Plaintiff's version of the events told to a representative of defendant before trial,[3] to her own physician, and to Dr. Nathaniel Nord[4] were the same as that given at the time of her deposition, never mentioning the turning motion to catch her child. Plaintiff's own physician, Dr. Fogg, testified that he heard that plaintiff was "involved in a rotary type stress" from plaintiff's attorney about one week before trial.

At trial, evidence was introduced to show the nature and extent of plaintiff's injury following the first accident. Using a deposition taken during the lawsuit arising from the 1988 accident, defendant's counsel cross-examined plaintiff regarding the symptoms she experienced after her first rear-end accident. In the course of that cross-examination, defendant's counsel asked plaintiff whether she had previously filed suit, and

2. Dr. Fogg made this determination on March 30, 1993, one day after plaintiff received $172,000 in settlement of her lawsuit associated with the 1988 accident.

3. Plaintiff gave a statement about the accident at issue to John Bennion, who was a representative of defendant. At trial defendant's counsel questioned her about this conversation:

> Q  Do you recall that you said I was just at a red light and sitting there and my little girl was with me and uh, I just felt this push and I sat there for, I don't know even how long it was, thinking I wasn't hit, I wasn't hit, I wasn't hit. And I sat there for quite along [sic] time. And

> finally she got out of the car and came around and then I stepped out of the car and she said, is your little girl okay. And are you okay. A  That would be, if that's what it says, that's probably what I said.

4. About three weeks before trial, Dr. Nord performed an independent medical examination on plaintiff in which he took plaintiff's history, focusing mainly on her improvement since the first accident and her subsequent development of symptoms after the second accident. At trial, defendant's counsel asked Dr. Nord, "Did [plaintiff] tell you that after the impact she rotated to the right in an effort to catch her child?" He responded, "No, she did not."

plaintiff' counsel raised no objection. Defendant's counsel also asked plaintiff to verify the settlement amount from her first lawsuit, stating, "Is it true that you received $172,000 in settlement of your claims in that lawsuit?" Plaintiff's counsel objected, arguing the settlement amount was not relevant, but the trial court overruled the objection and allowed the testimony. Plaintiff, however, was permitted to explain the settlement on cross-examination:

A (By [plaintiff] ) Did I receive that personally? No.

Q (By [defense counsel] ) Is that how much the settlement was for?

A That's true.

Q And you've had to pay some attorneys fees and other expenses; is that correct?

A Quite a few other expenses, that's correct.

Plaintiff further explained the settlement of her prior lawsuit on redirect examination:

Q How much of that $172,000 did you receive?

A Not very much. By the time we got, we paid, the attorneys got a third plus expenses, we paid for several people, like I said, to fly out, and pay for all the doctors and things that we went to see, were not covered under insurance. It covered that. It covered medical, or household needs, sitters after school, it covered a great deal of things. And we. ended up getting, is the answer to your question, to make a long story short, we ended up probably getting 30 or 40,000.00.

The jury returned a verdict finding defendant negligent. However, the jury found that defendant's negligence was not the proximate cause of plaintiff's injuries and awarded no damages. The trial court entered judgment for defendant based on the verdict. Plaintiff timely appealed.

## ISSUES AND STANDARD OF REVIEW

We are presented with two issues: (1) whether the trial court abused its discretion by permitting defendant to cross-examine plaintiff on plaintiff's prior personal injury lawsuit involving a similar injury and on the amount of the settlement of that lawsuit; and (2) if allowing the testimony was error, whether the defendant's introduction of such evidence was prejudicial, thus requiring reversal.

■ The trial court has broad discretion in determining the relevancy of offered evidence, and error will be found only if the trial court abused its discretion. *See State v. Harrison,* 805 P.2d 769, 780 (Utah Ct.App. 1991).

## ANALYSIS

■ First, plaintiff argues the trial court erred by admitting evidence of plaintiff's prior injury lawsuit. However, plaintiff failed to object to the introduction of evidence of that lawsuit. Thus, we must determine whether the failure to exclude the evidence was plain error. To establish plain error, plaintiff must show: "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful." *State v. Dunn,* 850 P.2d 1201, 1208 (Utah 1993).

We hold that the trial court did not commit plain error in admitting evidence of the prior lawsuit. Any error was not obvious because the law in Utah and in other jurisdictions is unsettled on this point, *see King v. Barron,* 770 P.2d 975, 978 (Utah 1988); *Nepple v. Weifenbach,* 274 N.W.2d 728, 732–33 (Iowa 1979),[5] and the trial court has broad discretion in determining the relevancy of offered evidence, *see Harrison,* 805 P.2d at 780. Furthermore, plaintiff offers no support for her contention that admitting evidence of the prior lawsuit was error which should have been obvious to the trial court.

■ Next, during cross-examination of plaintiff, defendant's counsel asked plaintiff to confirm that her first lawsuit was settled for $172,000. Overruling plaintiff's relevance objection, the trial court admitted testimony of the settlement amount. On appeal, plain-

---

**5.** Other jurisdictions have split on this issue. *See* V. Woerher, Annotation, *Cross–Examination—*

*Previous Condition,* 69 A.L.R.2d 593 (1960).

tiff argues the trial court abused its discretion by admitting evidence of the prior settlement amount because such evidence was clearly irrelevant and highly prejudicial. We agree that the evidence was irrelevant; however, we hold that its admission was harmless.

"Evidence which is not relevant is not admissible." Utah R. Evid. 402. Relevant evidence is defined as "evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Utah R. Evid. 401. "[W]e will find error in a relevancy ruling only if the trial court has abused its discretion. Additionally, an erroneous evidentiary ruling will lead to reversal only if, absent the error, there is a reasonable likelihood that there would have been a more favorable result for the defendant." *Harrison*, 805 P.2d at 780–81 (citations omitted).

*King v. Barron*, 770 P.2d 975 (Utah 1988), involved facts similar to those here. While stopped at an intersection, the defendant's vehicle rear-ended a vehicle in which the plaintiff rode as a passenger. *See id.* at 975. Although the impact of the crash was slight, the plaintiff testified that she aggravated neck and back injuries previously received four years earlier in another rear-end collision. *See id.* at 975–76. On cross-examination, defendant's counsel elicited testimony from the plaintiff that damages being sought by her in the action following the second accident were also claimed in a previous action. *See id.* at 977. The plaintiff's attorney made no objection to the admission of this testimony. *See id.* On redirect examination by the plaintiff's counsel, the court sustained an objection to a question asked the plaintiff as to whether she had received an award for medical expenses and lost wages in the other lawsuit, ruling that the amount of the prior award was irrelevant.[6] *See id.* at 978. On appeal, the Utah Supreme Court held that in this limited context a plaintiff could, on redirect examination, explain previous injuries and testify as to settlement amounts received

in suits arising out of those injuries. *See id.* at 980. However, the supreme court also recognized that when a defendant, as in the case at bar, affirmatively attempts to introduce evidence of prior settlement amounts, the situation is different. *See id.* at 978. The *King* court cited with approval *Worthington v. Caldwell*, 65 Wash.2d 269, 396 P.2d 797 (1964). *See King*, 770 P.2d at 978–79 (stating, with regard to *Worthington*, "[w]e do not disagree with that analysis").

In *Worthington*, the plaintiff "suffered two serious accidents prior to the collision" at issue in the case. 396 P.2d at 800. About three years before the accident at issue, she hurt her lower back in a car accident which provoked a lawsuit, and about four months before the accident at issue, she was involved in a work-related accident in which she suffered a herniated disk that required surgery. *See id.* In the course of her suit arising out of the third accident, defendant's medical expert examined the plaintiff. During the trial, the defendant's expert testified that the plaintiff had told the expert she had settled the previous lawsuit for $4000. *See id.* The plaintiff immediately moved for a mistrial, but her motion was denied. *See id.* On appeal the Washington Supreme Court concluded, "[p]roof of the amount of money received in settlement for personal injuries incurred in an automobile accident three years earlier was clearly irrelevant and immaterial as to the injuries sustained then and now, and, thus, had no probative value." *Id.* at 801. In explaining the holding of *Worthington*, the Utah Supreme Court in *King* stated that "while the physical injuries sustained by the plaintiff in the earlier accident were possibly relevant in proof of her physical condition at the time of her third accident, the amount of money awarded in settlement was not pertinent." 770 P.2d at 978–79.

Defendant in this case, as in *Worthington*, improperly asked plaintiff specific questions regarding the settlement amount of plaintiff's prior lawsuit. We hold that under the facts of this case, the evidence regarding the *amount* of plaintiff's settlement was irrele-

---

6. In the prior action, the court found the plaintiff to be 100% negligent and denied her any recov-

ery. *See King*, 770 P.2d at 976.

vant and thus had no probative value.[7] *See Alonzo v. With,* 214 Cal.App.2d 753, 760, 29 Cal.Rptr. 710 (Ct.App.1963) ("Whether or not the plaintiff's present low back condition was caused by the 1957 accident or by the subject accident is neither proved nor disproved by the amount of the 1957 settlement. The order of the trial court excluding the testimony in question was proper."); *Ferriola v. Burdick,* 146 Conn. 574, 153 A.2d 319, 320 (1959) (stating that amount of prior recovery was "completely irrelevant" because plaintiff admitted prior injury). In this case, plaintiff did not deny any prior injuries. Plaintiff testified that the prior settlement included medical expenses, household needs, and "a great deal of other things." Other than medical expenses, these amounts would have little, if any, direct bearing on what injuries plaintiff had suffered which were still in existence at the time of the second accident. *See Nepple,* 274 N.W.2d at 733, 734 (holding "evidence of the amount of prior settlements is inadmissible in the context of this case," because of its lack of probative value and prejudicial effect).

However, even though we hold that admitting evidence of the settlement amount of the prior lawsuit is error, we agree with defendant that such error was harmless. *See State v. Taylor,* 818 P.2d 561, 568 (Utah Ct.App.1991) ("Even when evidence is found to be improperly admitted, reversal is only required where admission of the evidence amounted to prejudicial error."). " 'Harmless' errors are 'errors which, although properly preserved below and presented on appeal, are sufficiently inconsequential that we conclude there is no reasonable likelihood that the error affected the outcome of the proceedings.' " *State v. Hamilton,* 827 P.2d 232, 240 (Utah 1992) (quoting *State v. Verde,* 770 P.2d 116, 120 (Utah 1989)); *see also* Utah R. Evid. 103(a); Utah R. Civ. P. 61; Utah R.Crim. P. 30(a); *Verde,* 770 P.2d at 120 (equating the three standards for harmless

error found in the Utah Evidence, Civil, and Criminal Rules). " 'For an error to require reversal, the likelihood of a different outcome must be sufficiently high to undermine confidence in the verdict.' " *Hamilton,* 827 P.2d at 240 (quoting *State v. Knight,* 734 P.2d 913, 920 (Utah 1987)).

"The more evidence supporting the verdict, the less likely there was harmful error." *Id.* Although introduction of the settlement amount was error, the record does not reveal what, if any, effect the error may have had on the jury. *Cf. Kelsey v. Chicago, Rock Island & Pac. R.R.,* 264 Minn. 49, 117 N.W.2d 559, 563 (1962) ("What influence adverse to plaintiff this evidence [of the amount of the settlement of an earlier, similar injury] may have had is indeed speculative...."). The record does reveal, however, sufficient other evidence that any negligence on defendant's part did not proximately cause plaintiff's injuries. First, a very small car hit a very large truck and caused no apparent damage to either. Second, plaintiff's own expert, Dr. France, testified that the rear-end impact itself would not have caused injury to plaintiff. Third, plaintiff never included information of her twisting to catch her child during the accident in four earlier versions of the accident or in any of her discussions with her own doctor. Fourth, defendant's expert testified that the rear-end collision would have thrown the child backward, not forward. Fifth, immediately following the accident at issue, plaintiff expressed no feelings of discomfort or injury. And finally, plaintiff's doctor testified that he could not explain her pain, could find no objective source of plaintiff's discomfort, and gave plaintiff a fifteen to twenty percent permanent impairment due to her injuries sustained in the first accident. Thus, the evidence shows that plaintiff's course of back pain following the second accident was consistent with her original course of back pain ebbing and flowing from the date of the first accident.

---

7. Our holding neither extends to the admissibility of evidence of the nature of damage claims in prior disputes nor bars admission of any evidence arising from prior disputes which may, under different facts, be relevant. *See, e.g., Kelsey v. Chicago, Rock Island & Pac. R.R.,* 264 Minn. 49, 117 N.W.2d 559, 563 (1962) (holding trial court properly admitted evidence of amount of money plaintiff received in settlement of earlier, similar injury, which was brought out by defendant before jury in mitigation of plaintiff's claim for aggravation of pre-existing injury to his back).

Additionally, plaintiff was permitted to explain the settlement of her prior lawsuit, which allowed her to substantially offset whatever harmful effects the trial court's error may have caused. In *King,* the Utah Supreme Court held that "[o]nce the subject of previous claims had been interjected into the case by defendant to discredit [plaintiff], we believe that she was entitled to make a full disclosure on that subject to rehabilitate herself and to dispel any inference that a verdict for her would result in double recovery." 770 P.2d at 980. Thus, although the case at bar is different from *King* where here plaintiff sufficiently objected, *King* suggests that once a prior settlement amount is interjected into a trial by either party, an effective form of rehabilitation for the plaintiff is to explain the prior settlement figures, which is just what the trial court permitted plaintiff to do here. *See id.* at 979–80; *see also Kelsey,* 117 N.W.2d at 563 (stating that "[i]f there was any adverse influence, any such effect could have been diminished or erased if plaintiff had availed himself of the opportunity he had to explain the precise nature of his previous injury as well as the terms of the settlement," in concluding trial court had not abused its discretionary power). Plaintiff established that most of the settlement proceeds went to expenses for attorneys, the trial, medical bills, and child-care, and she personally received only $30,000 or $40,000. This case is thus unlike the factually similar Iowa case of *Nepple v. Weifenbach,* 274 N.W.2d at 728, relied upon by plaintiff. In *Nepple,* because "[t]he settlement figures brought out on cross-examination ... were aggregations of [several] factors without any guidance for the jury to determine how much, if any, represented the residual injuries which defendants sought to establish," the Iowa Supreme Court concluded that such evidence lacked probative value and was highly prejudicial. *Id.* at 733–34.

Thus, both the substantial evidence in the record revealing that defendant's negligence did not proximately cause plaintiff's injuries and plaintiff's explanation of her prior settlement figures make the likelihood of a different outcome, as a result of the trial court's error, quite low. Accordingly, the trial court's error does not undermine our confi-

dence in the verdict and does not require reversal. *Cf. First Gen. Servs. v. Perkins,* 918 P.2d 480, 485 (Utah Ct.App.1996) ("In light of the substantial evidence supporting the other parties' claims and defenses, any error in admitting the challenged evidence was harmless in that 'there is no reasonable likelihood that the error [if any] affected the outcome of the proceedings.'" (quoting *Hamilton,* 827 P.2d at 240) (alteration in original)).

## CONCLUSION

First, because any error would not have been obvious, we hold that the trial court did not commit plain error in admitting evidence of the prior lawsuit. Second, we conclude that, under the facts of this case, evidence of the settlement amount of the prior lawsuit was irrelevant, and thus, the trial court abused its discretion in admitting such evidence. However, because the likelihood of a different outcome as a result of the trial court's error is low, we hold that such error is harmless. Thus, the trial court's judgment is affirmed.

BILLINGS and GREENWOOD, JJ., concur.