973 So.2d 1180 (2008)
Dale F. WILLIAMS and Julie Williams, Appellant,
v.
LOWE'S HOME CENTERS, INC., Appellee.
No. 5D06-2067.
District Court of Appeal of Florida, Fifth District.
January 4, 2008.
Rehearing Denied February 11, 2008.
*1181 Eric H. Faddis of Faddis & Warner, P.A., Casselberry, and Sharon H. Proctor, Lake Saint Louis, MO, for Appellant.
Jamie Billotte Moses and Jonathan C. Hollingshead, of Fisher, Rushmer, Werrenrath, Dickson, Talley & Dunlap, PA., Orlando, for Appellee.
MONACO, J.
This is a disturbing case. It is disturbing because the trial lawyers who were involved know better, or at least should have known better. Although we have concluded that we should affirm the final judgment because the errors complained of were not preserved and were not fundamental in nature, we do so with serious misgivings.
*1182 The appellants, Dale and Julie Williams, brought suit against the appellee, Lowe's Home Centers, Inc., as a result of an injury to a pinky finger that Mr. Williams incurred while he was using a circular saw that he had purchased at Lowe's. Although he had a number of liability theories, they basically boiled down to the assertion by Mr. Williams that the saw was sold in a defective condition.
Prior to trial, Mr. Williams made an ore tenus motion in limine to preclude testimony regarding a personal injury action that he brought as the result of an automobile accident that he was involved in several years before. Counsel for Lowe's, Mr. Hollingshead, argued in opposition to the motion that there were aspects of the prior accident and trial that were relevant to the present case. He suggested further:
And I think I should be allowed to inquire on that. If there is some particular question at some point in time, I think we can address it then. I don't think it's a subject for a motion in limine.
The court agreed and denied the motion to exclude "all references" to the prior suit, but said in addition: "However, I don't want us to go too far down that road." The court explained that some references to the suit might be relevant, depending on the context, but that he wanted to address it question by question as it arose during Mr. Williams' testimony. At that point Mr. Faddis, the attorney for Mr. and Mrs. Williams, said:
So would that be without prejudice for the plaintiff to again raise an objection?
To which the trial court responded:
If there's a particular question asked and you think there's an objection to be made at that time, go ahead and make it and I'll make a ruling at that time.
During the course of the ensuing jury trial, Mr. Williams testified with respect to how the injury was incurred, as well as to the damages he had suffered. While testifying on direct, his own attorney asked him about his 1995 accident, the injuries he suffered there, and the prescription pain medication that was prescribed for him,
On cross-examination, the attorney for Lowe's attacked various aspects of the plaintiffs' case on liability, and then moved to the matter of damages. In this connection the attorney for Lowe's delved into the earlier accident in which Mr. Williams had herniated two discs, and inquired further about the pain killers that Mr. Williams had been prescribed as part of his treatment regimen. He then asked Mr. Williams whether he had been able to pay Dr. Bosshardt, a physician who had been treating him for his current injury:
Q. You testified that you couldn't pay Dr. Bosshardt because you didn't have any health insurance, right?
A. I personally do not. Yes, sir.
Q. And you just couldn't afford to pay him anything?
A. I could actually afford to pay him a little bit. Yes, I could afford to pay him some. Yes, I could.
Q. In fact, when your previous case went to trial in June of 97, you received from that jury $148,000 for future medical expenses and future lost wages, none of which that you experienced since then. Is that true?
A. No, sir. It's not.
Q. And why is that?
A. I received $29,000 is what I got.
Q. Do you recall them paying for satisfaction of judgment?
A. I don't know what that is.
Q. $166,000?
A. No, sir. I do not. I don't know where $166,000 ever comes in.
Q. Well, let me show you a certified copy of your final judgment.

*1183 A. Sure.
Q. What's the figure of your final judgment?
A. It says $166,260 but I'd sure like to see it.
Q. Don't you think Dr. Bosshardt would like to see it too?
A. I would love for Dr. Bosshardt to see it. I would love to have seen it myself.
Mr. Williams then explained that Dr. Bosshardt knew he had a lawsuit that was progressing, and was nice enough to help him out by continuing to treat him without immediate payment. There was no objection to any of this testimony, even though in this case there was absolutely no relevance to the amount of money received by Mr. Williams in his earlier lawsuit.
Mr. Williams also testified on cross-examination that he was seeing a second doctor on a monthly basis, and that he was paying approximately $300 a month for his office visits and for oxycontin and other prescription medications. Counsel for Lowe's then pointed out that as a result of his earlier automobile accident, Mr. Williams had sought counseling from a mental health counselor and had told her that when he was younger he had difficulty with drug addiction. The records that counsel for Lowe's was reading from stated that at age fourteenmany, many years beforeMr. Williams was addicted to crack cocaine. Mr. Williams was asked whether he shared the fact that as a fourteen year old he was drug addicted with any of his current prescribing doctors.
No. I did not. That's a life that I have left behind over eleven or twelve years ago or more. Actually fourteen. That's a life I've left behind over-I can't even say how long it's been.
There was once again no objection to any of this testimony. After redirect, Mr. Williams rested.
Lowe's unsuccessfully moved for directed verdicts on various counts, and eventually rested. After the charge conference counsel for Mr. and Mrs. Williams moved for a mistrial, asserting that he felt awkward finding out about his client's juvenile cocaine addiction during the cross-examination of Mr. Williams. He argued:
It just struck like a ton of bricks. In reality I was torn between making an objection and moving for a mistrial at that point in time which would have highlighted the fact to the jury on matters that were completely and extremely prejudicial to this case. I attempted to originally move that any and all reference to the personal injury claim that he made in 1995 be precluded from being in front of the jury. Not only do we now have the fact that he made a personal injury claim, but we have evidence of a judgment in the amount of $166,000. I'm not sure how I would explain that sufficiently to remove the taint. We have the jury knowing that my client is a crack cocaine addict, which the probative value of that is none as far as I'm concerned and the prejudicial effect is going to be so great that the taint could not even be removed by a curative instruction.
And so at this point in time reluctantly I have to move for a mistrial. I don't want to do it. I know we've spent a lot of time and resources. I don't believe a curative instruction would work. I think that it would highlight again something that should never have been introduced before the jury. And reluctantly I'm moving for a mistrial.
Counsel for Lowe's claimed that his cross-examination was a result of matters that were brought out on direct, specifically, the oxycontin use and the fact that he couldn't pay his doctors because he did not have sufficient funds. Lowe's counsel felt *1184 the crack cocaine addiction was pertinent because Mr. Williams admitted that his doctor questioned him on numerous occasions about the addictive properties of oxycontin and the dangers of addiction to that drug. Counsel for Lowe's argued that Mr. Williams never volunteered to his doctor that he had any prior addiction issues that the doctor needed to address.
And Dr. Bosshardt yesterday testified that that would be the type of information that he would want to be considered if he was prescribing oxycontin and that he would inquire about that. The plaintiff admitted that Dr. Khodor inquired about that.
The court denied the motion for mistrial but noted that the crack cocaine testimony bothered him more than the other matters raised because it was so remote in time to anything that occurred in this case, even though there might have been some tenuous relevance with respect to his treatment by his present physician. The court then said:
I believe what I'll do is give the jurors a curative instruction as to the crack cocaine addiction that they are to disregard that and not make that part of any of the consideration they give in this case. I will give that curative instruction only as to the crack cocaine addiction.
When the jury returned it was instructed to disregard any evidence of the plaintiffs addiction to crack cocaine in that it was not to be considered in any part of their deliberations nor as part of their verdict.
In just under an hour the jury came back with a verdict. The jury found that Lowe's was not negligent and that it's actions were not a legal cause of injury to Mr. Williams. In addition, the jury either found that the circular saw was not defective, or if it was, it was not a legal cause of damage to Mr. Williams. Finally, the jury answered "no" .to the following special verdict question.
Was the circular saw when sold to plaintiff Dale F. Williams in a defective condition reasonably dangerous without substantial change and, if so, was such defective condition a legal cause of damage to plaintiff Dale F. Williams?
Mr. Williams moved post trial for a new trial, and renewed his motion for a mistrial. According to Mr. Williams, the jury's verdict was rendered upon inadmissible and highly prejudicial evidence attacking his character in a case that involved his character as the primary focus of defense counsel's efforts. Lowe's response was that all aspects of the medical evidence was disputed by the defendant, including the propriety of prescribing oxycontin at all, the medical information that would be important to know before prescribing oxycontin, and whether the oxycontin was reasonably related to this accident and injury or instead was, related to prior accidents and injuries. The trial court denied the motion for new trial and the renewed motion for mistrial, and entered a final judgment in favor of Lowe's. This appeal followed.
Mr. and Mrs. Williams initially argue that the trial court erred in admitting the evidence of the law suit Mr. Williams had successfully brought as a result of his earlier automobile accident, including evidence of the amount of the judgment that was obtained. The appellants first contend that the trial court erred in denying his motion in limine to exclude any mention of the prior suit because that information was irrelevant. Mr. and Mrs. Williams are essentially forced into this position because they introduced evidence of the earlier suit during the direct testimony of Mr. Williams, and they did not object during the cross examination of Mr. Williams when the law suit, including the *1185 amount of the recovery, were explored by counsel for Lowe's.
While the earlier injuries suffered by Mr. Williams may have had some measure of relevancy in the present case, the amount recovered in the prior lawsuit was simply not germane and should not have been elicited by Lowe's. See Leslie v. Higgason, 779 So.2d 470 (Fla. 2d DCA 2000). In fact, the vast majority of courts of the United States that have considered the issue have determined that such questions are improper. See Alonzo v. With, 214 Cal.App.2d 753, 29 Cal.Rptr. 710 (1963); Ferriola v. Burdick, 146 Conn. 574, 153 A.2d 319 (1959); Nepple v. Weifenbach, 274 N.W.2d 728 (Iowa 1979); Boyd v. Smith, 390 So.2d 994 (Miss.1980); Larsen v. Johnson, 958 P.2d 953 (Utah Ct. App.1998). But see Kelsey v. Chicago, R.I. & P.R. Co., 264 Minn. 49, 117 N.W.2d 559 (1962). Even if such information had any scant relevance, however, its prejudicial effect would clearly have outweighed its probative value. See § 90.403, Fla. Stat. (2006). There was, however, no objection. The focus of our attention is thus turned to the matter of preservation of error.
Historically, courts have held that in order to preserve an error for appellate review an objection must be made at the time the error occurs. See F.B. v. State, 852 So.2d 226 (Fla.2003). The rationale of the contemporaneous objection rule is to offer the trial court the opportunity to correct any mistake and to prevent a litigant from allowing an error to go unchallenged so it may later be used for a tactical advantage. Mr. and Mrs. Williams contend, however, that they preserved this error because they sought a ruling on the inadmissibility of the prior law suit by a motion in limine. We do not agree.
Section 90.104(1), Florida Statutes (2006), discusses rulings on evidence. It indicates that error may be predicated on the basis of admitted or excluded evidence when a substantial right of a party is adversely affected, and:
(a) When the ruling is one admitting evidence, a timely objection or motion to strike appears on the record, stating the specific ground of objection if the specific ground was not apparent from the context; or
(b) When the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer of proof or was apparent from the context within which the questions were asked. If the court has made a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve the claim of error for appeal.
(Emphasis supplied).
The problem with the argument put forth by Mr. and Mrs. Williams based on the motion in limine is that there was no definitive ruling obtained from the trial court. The judge simply said that he was not willing to rule on this question out of context, and instructed Mr. and Mrs. Williams to renew their objections at the time that questions concerning the prior lawsuit were asked. Because the trial court decided to allow testimony concerning prior injuries that Mr. Williams may have suffered, it did not make an unequivocal ruling on the motion in limine regarding other matters related to the earlier accident and subsequent litigation. This being the case, it was incumbent upon Mr. and Mrs. Williams to object on a questionby-question basis in order to preserve the matter for appellate review.
This case is similar in some respects to our decision in Tolbert v. State, 922 So.2d 1013, 1016 (Fla. 5th DCA), review denied, 934 So.2d 451 (Fla.2006). There, a criminal defendant asserted that the trial court erred in allowing testimony of his drug *1186 sales to be presented to the jury. Although he filed a motion in limine prior to trial to prohibit introduction of this evidence, the trial court reserved ruling on the motion. A final ruling was never made by the trial court, and there was nothing in the record to suggest that the defendant subsequently either pressed for a ruling or objected when the testimony was introduced. Based on section 90.104(1), we held that since the trial court did not either at trial or prior to trial make a definitive ruling on the record admitting or excluding the evidence, the defendant was required to make a contemporaneous objection to the evidence in order to preserve the claim of error for appeal.
In the present case, as in Tolbert, no definitive ruling was obtained from the trial court on the motion in limine. We conclude, therefore, that the error in allowing testimony concerning the amount of recovery from the prior law suit was not preserved, and was, therefore, waived.
Mr. and Mrs. Williams next assert that the trial court abused its discretion in denying their motion for mistrial and their subsequent motion for a new trial based on the questioning of Mr. Williams by defense counsel concerning the purported crack cocaine addiction of Mr. Williams fourteen years prior to the trial. We once again conclude, however, that this error was not preserved for appeal.
There was no objection made when on cross-examination defense counsel inexplicably began questioning Mr. Williams about a cocaine habit that he suffered from 14 years prior to the trial. We suppose that the idea was that the damages suffered by Mr. Williams were not as severe as they appeared because he only prolonged treatment so that he could obtain oxycontin and other pain killers to feed a drug habit. It seems clear, nevertheless, that the questioning amounted to little more than an improper attack on Mr. Williams' character. See, e.g., Shaw v. Jain, 914 So.2d 458 (Fla. 1st DCA 2005); Sterling Casino Lines, L.P. v. Plowman-Render, 902 So.2d 938 (Fla. 5th DCA 2005); Edwards v. Orkin Exterminating Co., Inc., 718 So.2d 881 (Fla. 3d DCA 1998). We can only attribute the defense lawyer's inappropriate questioning of the plaintiff in this respect to what was euphemistically described during the oral argument of this case as "overzealous advocacy." We view it as less than professional. Unfortunately, however, the first time that Mr. and Mrs. Williams brought their concerns about this testimony to the attention of the trial judge was by a motion for mistrial that was made after the conclusion of the testimony, after the disposition of various motions for directed verdict, after the defense rested and after the charge conference.
As we noted previously, at that time plaintiffs counsel brought his concerns about the temporally remote addiction testimony to the attention of the trial court he concluded his comments by saying:
We have the jury knowing that my client is a crack cocaine addict, which the probative value of that is none as far as I'm concerned and the prejudicial effect is going to be so great that the taint could not even be removed by a curative instruction.
And so at this point in time reluctantly I have to move for a mistrial. I don't want to do it. I know we've spent a lot of time and resources. I don't believe a curative instruction would work. I think that it would highlight again something that should never have been introduced before the jury. And reluctantly I'm moving for a mistrial.
The trial court responded that he would give the jurors a curative instruction on the purported cocaine addiction to the effect that they were to disregard the testimony. *1187 In due course when the jury returned to the courtroom, it was instructed to disregard any evidence of the plaintiffs addiction to crack cocaine and to exclude that information from any part of their deliberations. There was no objection to. the specific language of the curative instruction.
Generally, unless there is fundamental error, a motion for mistrial must be made at the time the improper comment was made. See Millar Elevator Serv. Co. v. McGowan, 819 So.2d 145, 153 (Fla. 2d DCA), review denied, 835 So.2d 267 CFla. 2002) (plaintiffs had not timely moved for mistrial because they failed to make a contemporaneous objection to testimony during the defense's case in chief; rather, they moved for mistrial on the day after the objectionable comments were made); see also Ed Ricke & Sons, Inc. v. Green By and Through Swan, 468 So.2d 908, 910 (Fla.1985) (motion for mistrial Must be made at the time the improper comment was made); Dorsey v. Reddy, 931 So.2d 259 (Fla. 5th DCA 2006). Fundamental error is error that goes to the foundation of a case or goes to the merits of the cause of action. See Sanford v. Rubin, 237 So.2d 134 (Fla.1970). It is error that "deprives a party of a fair trial or an error which objection or a curative instruction could not correct; such error gravely impairs the dispassionate and calm consideration of the evidence and merits by the jury." Cordoba v. Rodriguez, 939 So.2d 319, 322 (Fla. 4th DCA 2006).
Here, when the trial court was presented with the motion for mistrial, it recognized that the testimony was problematic because of its lack of relevance and its remoteness in time, and gave a curative instruction. It had to wrestle with a similar issue when it decided to deny the motion for new trial made by Mr. and Mrs. Williams. Ordinarily, the decision either to grant a mistrial or to give a curative instruction, or to grant a new trial rests within the sound discretion of the trial judge. See Hite v. State, 718 So.2d 270, 271 (Fla. 5th DCA 1998). In order to decide whether the trial court abused its discretion, we must first determine whether the improper remarks were so prejudicial as to deny defendant a fair trial. See Goodwin v. State, 751 So.2d 537, 547 (Fla. 1999). Although the granting of a mistrial or the giving of a curative instruction is generally within the trial court's discretion, a mistrial should not be granted unless an absolute legal necessity to do so exists. See Gonzalez v. Largen, 790 So.2d 497, 500 (Fla. 5th DCA 2001), review denied, 817 So.2d 847 (Fla.2002).
Here, there were no contemporaneous objections made by Mr. and Mrs. Williams to the suspect testimony. Thus, unless the admission of this testimony constituted fundamental error, we must affirm. In viewing the record as a whole, as well as the evidence adduced on the issues of liability, we are simply unable to conclude that the errors committed were fundamental. Counsel for Mr. and Mrs. Williams specifically related that when he heard the testimony about his client's past drug addiction, "I was torn between making an objection and moving for a mistrial at that point in time which would have highlighted the fact to the jury on matters that were completely and extremely prejudicial to this case." Counsel thus made a strategic decision not to object, and not to seek a mistrial at the time the offensive testimony was received. As our sister court in the fourth district has said in a similar context, "We must assume that silence from experienced counsel is a judgment play predicated on his or her concept of how the trial is going." Haist v. Scarp, 351 So.2d 1120 (Fla. 4th DCA 1977), approved, 366 So.2d 402 (Fla.1978).
*1188 In addition, we note that the jury found no liability in this case, and specifically found in response to a jury interrogatory that the saw in question was not in a defective condition when sold to Mr. Williams. The fact that the offending testimony primarily impacted damages, and that the issue of liability was quite seriously contested, gives some validation to our conclusion that the errors were not fundamental.
Accordingly, we affirm. We do so with some reluctance because we are offended by the tactics used by the defense. To reverse, however, we would have to inflict serious damage on important legal concepts involving the preservation of error. This we are not willing to do.
AFFIRMED.
PALMER, C.J., concurs.
SAWAYA, J., dissents without opinion.