[Nos. 37983, 38035. Department Two. March 17, 1966.]

DAVID K. LYSTER, *Appellant*, v. JOHN ARTHUR METZGER *et al.*, *Respondents*.
DAVID K. LYSTER, *Plaintiff*, v. JOHN ARTHUR METZGER *et al.*, *Appellants*, OTIS ELEVATOR COMPANY, *Respondent*.*

*Reported in 412 P.2d 340.

*John R. Simmons,* for appellant.

*Jack E. Hepfer* and *Bruce Maines,* for respondents and appellants Metzger et al.

*Bateman, Reed, McClure & Moceri* and *Roy J. Moceri,* for respondent Otis Elevator Company.

LANGENBACH, J.†—Appellant David K. Lyster sued to recover damages for injuries he allegedly sustained during the overtraveling of the elevator in the Hotel Sorrento in Seattle, March 10, 1960. The Otis Elevator Company (herein called Otis) was made a third-party defendant inasmuch as it had serviced the elevator in the hotel. Respondents sought an indemnity from Otis in event of a judgment for appellant.

At the close of the testimony, the court granted a motion

---

†Judge Langenbach is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

to establish respondents' liability as a matter of law. It also granted a motion of dismissal of Otis as a matter of law. The question of appellant's damages was the sole matter submitted to the jury. It returned a verdict for him in the sum of $35,000.

Upon post-trial motion for a new trial, the court granted it on five specific grounds, unless appellant accepted a reduction to $20,000. This was not acceptable, so the new trial was granted. Appellant has appealed and the respondents have cross-appealed as to the dismissal of Otis. These will be considered in their respective order.

Appellant assigned as errors the five grounds on which the new trial was granted.

Appellant was an Air Force colonel, 45 years old. He was a passenger in the Hotel Sorrento elevator the evening of March 10, 1960, when it overtraveled its landing and hit the bottom of the pit. He sustained neck and back injuries and was shaken. He had difficulty getting out of bed the next morning. Two days later, his business in Seattle being finished, he flew back to Ogden, Utah, his air base. He received incidental treatment and tranquilizers. He lost only 3 days from work. He had been athletic, hunted, fished, swam and golfed. After the accident, such activities caused him pain and much discomfort.

He had received cursory treatment from Air Force doctors. February 3, 1961, he first consulted Dr. Swindler in Ogden. He was seen by this doctor September 12, 1961, and January 31, 1964, thereafter. X rays were taken on each occasion, as well as on March 12, 1960, when he arrived back at his base. He was examined by three orthopedic doctors who took substantially the same history of him, his injuries and subsequent treatment.

Dr. Glloyd examined appellant for the respondents, although he testified for the appellant in his case in chief. Dr. Swindler examined him on four occasions, and Dr. O'Neil examined him once, but had conferred with Dr. Swindler by mail and had referred him to Dr. Rankin, a neurologist. who reported his findings back to Dr. O'Neil.

The essentials of these separate examinations of appellant may thus be summarized:

Dr. Glloyd: Appellant apparently suffered dorsal lumbar and cervical spine strain as the result of the March 10, 1960, accident. The main limitations are along recreational lines —hunting, fishing, swimming, bowling and golfing; he was in excellent health before the accident. He has tenderness in back of neck and in his back and numbness in legs; hypesthesia in left foot. *Diagnosis:* X rays showed slight spurring 6th and 7th cervical vertebrae; low back mild hypertrophic spurring. He suffered dorsal lumbar and cervical spine strain in this accident. Difficult to determine direct relationship between present symptoms and the accident. No evidence of residual nerve root irritation or compression; no evidence of herniated disc or permanent disability; probable he doesn't have a disc in low back. In case of nerve root involvement, patient is referred to neurologist. Not a malingerer, more a psychological or emotional reaction.

Dr. Swindler: From findings and X rays of March 12, 1960, February and September, 1961, and January, 1964, appellant has defect in intervertebral disc at L-5 and S-1 intervertebral space and probably L-4 and L-5 space involvement of nerve root left side as it enervates left leg muscles. He incurred injury to disc between L-4 and L-5 and certainly between L-5 and S-1 and ruptured disc was responsible for symptoms and findings when examined. It is a physical disability and impairment of the intermuscular skeletal system. Treatment is difficult and conservative— back support and physical therapy of some kind. If he develops paralysis or weakness in the legs, surgery is required.

Dr. O'Neil: Appellant has sprain in upper back and neck; sprain of lower back and nerve damage. Strain does not necessarily tear tissue, sprain does; a sprain is more serious than strain. Appellant sustained multiple soft tissue injuries, March 10, 1960; has permanent partial disability and aggravation of pre-existing arthritis by injury. Disc was herniated or torn. X rays showed narrowing of disc

between L-5 and S-1 which caused pressure and irritation of nerve root; this will not improve except by lower level of activities, by precaution and back support and exercises. He consulted Dr. Rankin concerning neurological examination and report. Dr. O'Neil prescribed certain exercises and medications by mail; this is usual in his practice.

Dr. Rankin, neurologist: From electromyographic electronic tests, appellant had nerve root syndrome. Two nerves were damaged, one on each side where disc is. Ruptured intervertebral disc at lumbosacral interspace, and damaged disc at L-4 and L-5 interspace. A progressive process, unless treated, will get worse. Reported test findings to Dr. O'Neil and recommended treatment.

All these doctors found objective symptoms bearing upon the injuries of appellant in the course of their examinations. They all examined the various X rays and their conclusions and diagnoses showed very little material variations.

Dr. Stewart of the Air Force was called to testify concerning Air Force regulations. He was examined in chambers as to the purport of his testimony. Later the same questions were permitted before the jury, over respondents' objections. His testimony is reported herein in conjunction with one ground for granting the new trial.

> [A]n order granting or denying a new trial is not to be reversed, except for an abuse of discretion. [Citing case.] This principle is subject to the limitation that, to the extent that such an order is predicated upon rulings as to the law, such as those involving the admissibility of evidence or the correctness of an instruction, no element of discretion is involved. [Citing cases.] A much stronger showing of an abuse of discretion will ordinarily be required to set aside an order granting a new trial than one denying it. [Citing case.] *Johnson v. Howard,* 45 Wn.2d 433, 436, 275 P.2d 736 (1954).

*Accord, Coleman v. George,* 62 Wn.2d 840, 384 P.2d 871 (1963); and *Worthington v. Caldwell,* 65 Wn.2d 269, 396 P.2d 797 (1964).

Inasmuch as the assignments of error are based upon the five grounds for granting the new trial, they will be set out seriatim, and discussed in that order.

1. Error in allowing Dr. O'Neil to relate appellant's history and base his medical opinion on hearsay history when Dr. O'Neil was not a treating doctor, but was hired by appellant for sole purpose of examining him in order to testify at trial. On one occasion (January 31, 1964), Dr. O'Neil, at the request of appellant's attorney, examined appellant. Over objection, Dr. O'Neil was allowed to testify as treating physician that, in his opinion, appellant had some permanent partial disability in back. The court cited *Petersen v. Department of Labor & Indus.*, 36 Wn.2d 266, 217 P.2d 607 (1950).

■ Dr. O'Neil's testimony was summarized above. The *Petersen* case, *supra,* noted the applicable rule to be that, as an exception to the hearsay rule, a doctor who treats a patient and later becomes a witness may testify as to his medical conclusions, which may be based substantially on subjective symptoms (or in the realm of hearsay); on the other hand, a doctor who examines a patient merely for the purpose of qualifying as a witness may not testify as to his medical conclusions based upon subjective symptoms described by the patient; such violates the hearsay rule. The doctor is limited in his testimony to objective findings and the answering of hypothetical questions.

> Objective symptoms, in ordinary cases, are those within the independent knowledge of the doctor, because they are perceptible to persons other than a patient. Subjective symptoms are those perceived only by the senses and feelings of a patient. The doctor must be told of them because he cannot himself perceive them. *Hinds v. Johnson,* 55 Wn.2d 325, 327, 347 P.2d 828 (1959).

All three of the orthopedic doctors, as well as the neurologist, found objective symptoms concerning the appellant's condition and its causation.

The testimony of Dr. O'Neil was properly admissible. The history of appellant had already been detailed for the jury by appellant himself, by Dr. Glloyd, who examined appellant for the respondents, and by Dr. Swindler, who had treated him four times. Certain objective symptoms were

related by Dr. O'Neil. This was not a legally sufficient ground for granting a new trial.

2. Error in allowing Dr. Stewart, flight surgeon, Air Force, to testify with reference to future loss of flight pay.

As part of appellant's deposition (which was read into the record by respondents) at the time of trial, appellant was 47 years old and, under Air Force policy, all officers over 45 years were "being phased out of the cockpit" effective July 1, 1963; that he was no longer on active flight duty but entitled to flight pay since he had accrued 22 years of active flying duty.

In chambers, the following questions were asked and answered:

Q. You have familiarized yourself, at least from the plaintiff's standpoint, of what we think his condition is, a ruptured intravertebral disc between the 5th lumbar vertebra and the sacrum, and maybe one between the 4th and 5th lumbar. Now, if he has this condition, would this disqualify him from receiving further flight pay in the service? A. According to Air Force regulations . . . this is a disqualifying defect for Flying Class 2 physical. . . . THE COURT: . . . Captain Stewart should be allowed to testify that from his experience and from his knowledge of Air Force policy and regulations, an officer suffering from a herniated disc in the area that you described is disqualified from active flying. . . . And we will forget the rest, and you are not to say anything about what the future might be for retirement or anything else.

In court the same questions were asked and the same answers given. In addition, on cross-examination:

Q. And assume . . . that Colonel Lyster does not have a herniated disc, but that he has a back strain, would this disqualify him? A. . . . Spine problems [are] causes for rejection.

■ Opinion evidence is admissible to prove competency to hold office or engage in a profession. *Lynch v. Republic Publishing Co.*, 40 Wn.2d 379, 243 P.2d 636 (1952). Impairment of earning capacity is different from loss of wages; it is the permanent diminution of the ability to earn money. *Murray v. Mossman*, 52 Wn.2d 885, 329 P.2d

1089 (1958). An expert witness may give opinion evidence as long as he stays within the field of his expertise. *McBroom v. Orner,* 64 Wn.2d 887, 395 P.2d 95 (1964).

The testimony of Dr. Stewart was properly admissible for this limited purpose. This reason was not legally sufficient to warrant the granting of a new trial, based upon it.

3. Prejudicial error in direct testimony of appellant that he had been contacted by a "General Insurance Company adjuster," after the accident. Respondents moved for a mistrial and adequately preserved the record, but the motion was denied. Prior to trial, in chambers, counsel advised appellant not to discuss or mention insurance in testimony. After jury was excused, appellant admitted he was so advised, but had forgotten.

Near the close of the second day's testimony, appellant stated, "I had also filed my report with Mr. Mooring who represented himself to me as being a General Insurance Adjuster. I gave him a full report that I had written." (The court then adjourned for the evening.)

A discussion followed and respondents' counsel stated, "And he specifically described him as a General Insurance Company representative. Now I would like to credit the Colonel with good faith on it and presumably it was an inadvertence, but in any event, it did come in. . . . Frankly, at this point, I don't know what motion I will have, if any. I would like the opportunity to think on it tonight."

The matter was continued until the next morning. Again respondents' counsel stated, "I will have to assume it was inadvertence."

The motion for a mistrial was then denied, with leave to renew it later. But this was not done.

It is undoubtedly the general rule in this state, in personal injury cases, that the fact that the defendant carries liability insurance is entirely immaterial on the main issue of liability, and that the wanton intrusion of such fact by the plaintiff is positive error, essentially prejudicial to the defendant, and constitutes ground for reversal. [Citing cases.]

Where, however, the mention of insurance is inadvertent and it appears that neither the attorney nor the witness connected with the case deliberately, willfully, or collusively injected such fact into the proceedings before the jury, a mistrial will not be granted. [Citing cases.] *Williams v. Hofer*, 30 Wn.2d 253, 265, 191 P.2d 306 (1948).

The motion for a mistrial was properly denied. This ground did not warrant, in law, the granting of a new trial.

Later in the trial, an inspector for the General Insurance Company, as such, testified in the case. The court also determined that the respondents were liable as a matter of law; only the question of damages was submitted to the jury.

4. "Verdict of $35,000 was grossly excessive, both indicating passion and prejudice and so excessive as to shock the conscience of the court." The court then set out detailed facts: appellant was never hospitalized; he did not see private doctor until February 3, 1961; and appellant was not handicapped in Air Force duties, but was recommended for advancement; no loss of income.

The granting of a new trial on the ground that the verdict is so excessive as to unmistakably indicate that it was the product of passion or prejudice is, of course, a matter within the discretion of the trial court, but such an order can and should be set aside where there is a manifest abuse of discretion. . . . The verdict does not appear to be excessive if the evidence favorable to the appellant's claim was believed, and it was within the province of the jury to believe it. *Coleman v. George*, 62 Wn.2d 840, 843, 384 P.2d 871 (1963).

In *Worthington v. Caldwell, supra,* we held, at 273:

Questions of damages should be decided by the jury and, once the jury renders its verdict, a statutory presumption exists that they have found correctly. [Citing case.] Nor should the trial court substitute its judgment for that of the jury as to the amount of damages. [Citing cases.]

In *Day v. Frazer*, 59 Wn.2d 659, 369 P.2d 859 (1962), the case of *Pritchett v. Seattle*, 53 Wn.2d 521, 335 P.2d 31, was quoted at 665:

"It is the province of the jury to weigh the evidence, under proper instructions, and determine the facts, and to believe or disbelieve any witness whose testimony it is called upon to consider; and the finding of the jury, upon substantial, conflicting evidence properly submitted to it, is final. [Citing case.]"

In the case at bar, there was practically no conflict in the evidence. The only possible conflict was whether appellant suffered a sprain or a strain; and whether there was a disc injury in his back. These were questions for the jury and they had a right to believe any of the doctors testifying. It is apparent they believed Doctors Swindler and Rankin, even if we disregard Dr. O'Neil entirely.

5. In addition to the above reasons, substantial justice has not been done. At conclusion of the second day, while testifying, appellant appeared overcome with emotion. (The trial was then recessed for the day.) There was no evidence that appellant was suffering either psychological disabilities or under any particular physical pain. Next day no explanation was given to the jury regarding the emotional reaction.

Near the close of the second day's testimony, appellant said, "When I got to Ogden, I was in a position—excuse me, Judge." The court then adjourned for the night. No objection was made about this matter. The question about the injection of insurance and motion for a mistrial was discussed. The next morning the mistrial argument continued, but was denied. Nothing further appeared about the above item.

■ Inasmuch as the order granting the motion for a new trial does not, in stating the court's reasons therefor, refer to anything which is not shown in the record, we conclude that the court did not grant the motion because of any matter dehors the record. In *Johnson v. Howard,* 45 Wn.2d 433, 275 P.2d 736, this court said, at 437:

It is no longer necessary for us to *assume* that, where the trial judge has said that the damages were excessive (or inadequate), he was influenced by conditions existing and circumstances occurring during the trial, which could

not be made part of the record. If he was actually so influenced, he is to say so in giving his reasons for granting a new trial. Where he does not say so, and even though he gives as an additional reason that substantial justice has not been done, it will be assumed that the justification for the action taken is to be found in the record.

*Accord, Boyle v. Clark,* 47 Wn.2d 418, 287 P.2d 1006 (1955).

The trial court has failed to state in what way the appearance and demeanor of appellants demonstrated that the award was excessive, or how their appearance and demeanor prejudiced respondents. In the absence of such definite reasons, we must hold that this is an insufficient basis for concluding that the award was so excessive as to indicate passion or prejudice. *Johnson v. Howard, supra,* at 441.

■ From a critical examination of the five grounds given by the trial court for granting the new trial, it appeared that no element of discretion was involved. All of these grounds were predicated upon questions of law. As stated in *Johnson v. Howard, supra,* where such an order is predicated upon rulings as to the law, such as involving the admissibility of evidence or the correctness of an instruction, no element of discretion is involved. In each of these five grounds, such reasons are not supported by the applicable legal principles and decisions.

If . . . there was sufficient evidence of believable qualities arising from the direct and cross-examination of all witnesses, the courts ought not to weigh the quantum of evidence to determine if it balances on one side or the other. Weighing the evidence lies exclusively within the province of the jury. This concept has been long established in this state, . . . . *Helman v. Sacred Heart Hosp.,* 62 Wn.2d 136, 148, 381 P.2d 605 (1963).

*Accord, Teig v. St. John's Hosp.,* 63 Wn.2d 369, 382, 387 P.2d 527 (1963).

The position of the trial court appears rather incongruous and incompatible in granting a new trial unless a reduction of $15,000 is accepted. If merit existed in the other grounds and reasons for a new trial, it should have been granted

unconditionally. It appeared they were not meritorious enough for that purpose unless the reduction was rejected. If these grounds were not legally sufficient against a reduced verdict of $20,000, likewise they are insufficient against the original verdict. The only meritorious reason, therefore, appeared that the verdict was excessive, at least to the extent of $15,000.

Nevertheless, all of the orthopedic doctors (even disregarding Dr. O'Neil) and the neurologist agreed that appellant sustained severe and serious neck and back injuries. He was still manifestly suffering from them at the time of trial, some 51 months after the accident. It cannot be said as a matter of law that the jury was motivated by passion and prejudice in the amount of the verdict. Liability was admitted and conceded. The amount of the recovery was the only question submitted to the jury.

In sum, the testimony of Doctors O'Neil and Stewart was relevant and admissible; the reference to the General Insurance adjuster was incidental and harmless, particularly in the light of later testimony of an inspector from that same company and the ruling of liability as a matter of law. Likewise ground of excessiveness of verdict is not borne out by the evidence submitted to the jury. Nor was there a sufficient basis that substantial justice had not been done.

There was ample, uncontradicted testimony to show the cause and extent of appellant's injuries and their degree of permanence, the past, present and future extent of his pain, suffering and disability. This was entirely within the sole province of the jury.

This court cannot hold from the state of the record that there were any circumstances occurring of a prejudicial nature against the respondents. The liability of the respondents for the accident was conceded. The amount of damages sustained by appellant was the only question submitted to the jury. There was credible testimony, if believed by the jury (which they did), to sustain the verdict. Under such circumstances, neither the trial court nor the appellate court may substitute its judgment for that of the jury. *Day v. Frazer*, 59 Wn.2d 659, 369 P.2d 859.

The order granting a new trial is reversed; the cause is remanded to reinstate the verdict of the jury.

Respondents' Cross Appeal.

Respondents joined Otis as a third-party defendant to recover in event appellant was awarded damages against respondents. This was based upon the allegation that Otis made a condition survey of the elevator and made recommendations concerning renovation and repair in 1958. It was alleged that thereafter Otis was responsible for the operation of the elevator, which was warranted to operate satisfactorily and safely. Therefore, any damages suffered by appellant were due to negligence of Otis. Consequently, respondents were entitled to an offset judgment for such damages against Otis.

Otis answered that it had made certain recommendations for substantial repairs; that these were refused and Otis later entered into a contract for service adjustments only. It had performed its part of this contract fully and completely, and it had made no warranty, express or implied. Consequently, it was not liable in any way.

Most of the evidence on this phase of the action was submitted by Otis. It had two forms of contract: (1) complete maintenance, maximum service; and (2) inspection and adjustment only, minimum service. Otis had made a full and complete study and examination of this elevator. It had recommended major repairs costing some $4,000, to be made to the elevator system before Otis would make a maximum service contract. This the hotel refused to do—agreeing to only a part of the repairs. Thereafter, it contracted for the minimum service contract for inspection and adjustments when needed. This contract did not expressly state that Otis would keep the elevator in a safe operating condition; whereas the maximum service contract did so state.

Whenever any service adjustment problems were called to its attention, Otis immediately took care of the same fully and promptly under its contract. Any repairs required were outside the scope of its contract and these were billed to the hotel separately. On November 21, 1959, Otis per-

formed repair work which was outside the scope of its service contract; the work was to repair damages resulting from overtraveling. On February 7 and 9, 1960, Otis performed other repair work outside the scope of its contract and which was not related to the overtraveling problem. There was no complaint in any manner about the sufficiency of such repairs.

Otis never advised the hotel that it knew the cause of the failure of the elevator; on the contrary, it advised that it did not know the cause. It had recommended the complete overhaul and examination to find and remedy the cause. The hotel refused to do so. Evidently the inspector for respondents' insurance carrier was also unable to determine this cause. On the basis of the evidence, the trial court granted the motion to dismiss Otis from the action as a matter of law.

Respondents made six assignments of error.

1. The trial court erred in giving instruction No. 1, and in dismissing the third-party complaint, as a matter of law. This instruction set forth that appellant sued for injuries; that the court had decided the hotel was liable as a matter of law; and that Otis was relieved of liability on the cross complaint as a matter of law.

In support, respondents cited the rule that a challenge to the sufficiency of the evidence admits the truth of the challenged evidence and all inferences reasonably to be drawn therefrom, to be interpreted most favorably to respondents here. *Billingsley v. Rovig-Temple Co.*, 16 Wn.2d 202, 133 P.2d 265 (1943).

The remaining assignments of error and arguments thereunder are in support of the first assignment of error.

2. Errors 2, 3 and 4, referred to respondents' requested instructions 2, 3 and 4 and are argued together. Instruction No. 2 stated Otis held itself out as specially qualified to perform elevator maintenance service and repair; therefore, there was an implied warranty that its repair would be proper workmanship and reasonably fit for its intended use; Nos. 3 and 4 are in essence the same, bearing upon implied warranty.

Respondents argued that all of the work done by Otis carried with it an implied warranty of proper workmanship and reasonable fitness to its intended use. 17A C.J.S. *Contracts* § 329 at 293. Respondents relied on the work done by Otis in performance of the recommendations of the Otis conditional survey, on the service contract, and on the work performed outside the service contract on November 19, 1959, and February 7 and 9, 1960.

The evidence is detailed above. There was no complaint as to the extent and adequacy of the repairs and adjustments as provided by Otis under its contract. In essence, respondents' complaint is that Otis did not discover and repair the cause of the malfunctioning. This Otis desired to do under its maximum contract, but this was rejected by respondents. Consequently, there was no evidence or inference from the evidence of any fault or negligence on the part of Otis. It is to be noted that, after this accident, the hotel did subscribe to the maximum service contract. Thereafter no further mishaps occurred.

In addition, the part performance of recommendations from the conditional survey and the repairs outside the minimum service contract do not substantiate an implied warranty theory; these repairs did not attempt nor purport to remedy the elevator from overtraveling. On the contrary, respondents knew that Otis did not know the cause of the overtraveling.

3. Assignments of error 5 and 6 are argued together as affecting requested instructions 5 and 6. They are based upon the right of indemnity of respondents against Otis. They proceed upon the theory that Otis gave the hotel an implied warranty of reasonable fitness of the work for its intended use. If Otis failed to keep the elevator in a safe operating condition and this proximately caused appellant's injuries, Otis would be liable.

As a general rule, there is no right of indemnity between joint tort-feasors. See *Rufener v. Scott,* 46 Wn.2d 240, 280 P.2d 253 (1955). We, however, do not decide the applicability of this rule. Respondents' argument is based upon

the unsupported assumption that there was an implied warranty on the part of Otis. What has been said concerning the other assignments of error applies equally here. There was no evidence of an implied warranty.

Upon the basis of the evidence, the trial court properly dismissed Otis as a matter of law. This part of the judgment is affirmed. The case is remanded to reinstate the amount of the jury verdict.

ROSELLINI, C. J., DONWORTH, FINLEY, and WEAVER, JJ., concur.

*Reported in 412 P.2d 349.