

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

PAULA TERRELL, an individual, )  NO. 71955-6-I
  )
  Respondent, )
  )  DIVISION ONE
v. )
  )
GORDON HAMILTON, an individual, )
  )  UNPUBLISHED OPINION
  Appellant. )
  )  FILED: August 24, 2015
_____)

LAU, J. — Gordon Hamilton appeals a jury verdict in favor of Paula Terrell. Terrell

sued Hamilton for negligently injuring her in a car accident. Hamilton argues the trial

court abused its discretion by (1) orally instructing the jury that the only way Terrell

could recover damages from Hamilton's insurance company was through the lawsuit,

(2) declining to give a "skidding" jury instruction based on Rickert v. Geppert, 64 Wn.2d

350, 391 P.2d 964 (1964), (3) denying Hamilton's motion for a new trial, and (4) denying

Hamilton's motion for remittitur. But the trial court's oral and written jury instructions

were proper because they were not misleading, caused no prejudice to Hamilton, and

allowed Hamilton to argue his theory of the case. The trial court also properly denied

remittitur because Terrell's award was not so flagrant as to indicate prejudice or

passion. We affirm the judgment because the trial court did not abuse its discretion.

FACTS

On December 14, 2008, Gordon Hamilton and Paula Terrell were involved in a car accident. Hamilton, the driver, lost control of his truck due to snowy conditions. The truck left the roadway and hit a tree. Terrell, the passenger, suffered severe injuries. Since about 2003, Terrell and Hamilton have been in a romantic relationship. They entered into a domestic partnership sometime after the accident. In November 2011, Terrell sued Hamilton for negligence to recover damages for medical costs, physical pain, mental anguish, disability, discomfort, loss of earnings, and loss of enjoyment of life.

The "specter of insurance" was present from the beginning of the trial. Report of Proceedings (RP) (Feb. 25, 2014) at 53. One of Terrell's motions in limine sought to exclude a statement she made to Hamilton's insurance agent shortly after the accident. Hamilton opposed the motion, even though he conceded that admitting Terrell's statement would "open the door" to at least some evidence of insurance. RP (Feb. 25, 2014) at 57. The trial court denied Terrell's motion to exclude the statement. It clarified that Terrell could explain that she made the statement to Hamilton's insurance agent. Hamilton knew that introducing the statement would signal to the jury that he was insured. He mentioned the statement anyway during opening statement, and during Terrell's cross-examination. Hamilton already suspected the jury would be aware of his insurance due to the nature of the case: "The jury is going to know there's insurance, I mean, it's, you know, a marital couple, if you will, suing each other." RP (Feb. 25, 2014) at 56. During voir dire, several jurors mentioned insurance without specifically being asked. After the jurors referenced insurance, Hamilton's counsel

asked the jurors whether insurance was relevant: "I want to talk about just insurance generally. How many people think as triers of fact that they'd like to know if there's insurance or not?" RP (Feb. 25, 2014) at 205. One juror said "probably not," and another said it "depend[ed] on the situation." RP (Feb. 25, 2014) at 206-07.

The jurors also seemed to be confused as to why someone would sue her spouse:

> Ms. Sargent [Terrell's counsel]: What about if it's your spouse or your partner? Does anyone have a problem if your spouse hurts you? If you get into a wreck and it's your spouse's fault?
> . . .
> Juror: Are they not a legally united entity, and so how do you take legal action against essentially yourself?
> . . .
> Ms. Sargent: Well, let me ask you a more direct question: would you have a problem with a wife suing her husband for his negligent act? Or would anybody? . . . .
> Juror: I guess I don't know that I would have a problem with him bringing the case, but it would, I'm not sure how it would be pursued.

RP (Feb. 25, 2014) at 181-83. The trial court noted the jurors' confusion on this point and expressed a concern—outside the jury's presence—that the jury did not understand why the plaintiff might sue her spouse:

> The Court: Okay. All right. And, I mean, the real reason why is this gap of information that's floating out there now of why would somebody sue a spouse, or why somebody sues a domestic partner, or why somebody sues a significant other, that somehow is very, one, misleading and really presents a real question that I have some concerns about in terms of how it is that people are going to try to address this.
> . . .
> The Court: . . . What I'm thinking, given my prior rulings, which I'm not changing . . . Is some sort of advance instruction that puts it out there, but tells them still, that in terms of determining damages it really doesn't come into play. But what I want them to know is that that's real, I mean, that's just a fact here, because there's got to be a way that this doesn't get out of control if I don't.

And that's why I'm looking at an initial instruction from the very get-go that recognizes that's a fact and yet instructs them later when they make a determination, they need to make a determination based on the evidence, not just because somebody is insured. But I want this to be out in the open to the extent that that's why we're here.

RP (Feb. 25, 2014) at 220-21.

The trial court gave the jury an oral instruction to help them understand the context of the case, specifically that "there is a third party payor in this situation [the insurance company] and that [Terrell] is having to sue this individual [Hamilton]" to recover damages from that third party. RP (Feb. 25, 2014) at 225. The trial court directed the parties to draft potential instructions, and the following day the court explained its reasoning for providing the instruction and asked the parties for any modifications:

The Court: I will make my record as to why I believe an oral instruction is necessary in this particular case and I'll do so now, but ask for your input on whether or not there ought to be any modifications.

I'm giving an oral instruction on an issue that came up in jury selection because of the confusion and what I believe might be a great injustice that potentially exists in the case. Ordinarily, we would not instruct on any collateral benefits or third party and yet the fact of insurance comes up in many cases. We instruct to cure any prejudice and we instruct on the law that we presume the jurors will follow. In this particular case, there will be evidence of statements made to insurance representatives that this court is allowing as evidence for impeachment purposes. Given the unique set of facts and circumstances and the complicated nature of the case, there's a significant risk of misleading the jury and allowing a great injustice to occur if I don't give this instruction.

I want this jury to focus on the facts and the evidence, and I believe an instruction is necessary to remove actually the taint of insurance or a third payer. At the risk of error, I'm orally instructing the jury and will instruct them at the end of the case, as well, that the fact that there is insurance shall not be considered in making or declining to make an award. But I believe from the very get-go I need to provide an instruction.

-4-

Clerk's Papers (CP) at 235-36. Hamilton took exception to the instruction. He did, however, admit the instruction was "fair" and suggested a modification in the event that the court decided to give the instruction, which the court adopted. RP (Feb. 26, 2014) at 237-38. At the beginning of the trial, the trial court orally instructed the jury:

> As you heard in jury selection, Ms. Paula Terrell and Mr. Gordon Hamilton, the plaintiff and the defendant, are domestic partners. There was some discussion about litigating against your own marital community. Because your sole focus will be the factual issues that this court gives to you for consideration, I wish to advise you at this time that Mr. Hamilton is insured and the only way Ms. Terrell can access insurance is through this case. The fact that there is insurance shall not be considered in any way in the way that you view the facts and shall not be considered in any award of damages if any are awarded.

RP (Feb. 26, 2014) at 247. This instruction was not repeated in the court's instructions to the jury. The trial court's jury instructions later directed the jury that "[w]hether or not a party has insurance, or any other source of recovery available, has no bearing on any issue that you must decide."[1] CP at 429.

---

[1] Jury instruction 16, which includes a recitation of WPI 2.13 on insurance and collateral sources, provides:
> You have heard evidence about insurance in this case. Whether or not a party has insurance, or any other source of recovery available, has no bearing on any issue that you must decide.
> You must not speculate about coverage. You are not to make or to decline to make any award, or increase or decrease any award, because you believe that a party may have medical insurance, liability insurance, workers' compensation, or some other form of compensation available. Even if there is insurance or other funding available to a party, the question of who pays or who reimburses whom would be decided in a different proceeding.
> Therefore, in your deliberations, do not discuss any matters such as insurance coverage or other possible sources of funding for any party. You are to consider only those questions that are given to you to decide in this case.

CP at 429; see also WPI 2.13.

The court declined to include a "skidding" instruction proposed by Hamilton. Relying on <u>Rickert</u>, Hamilton proposed an instruction that provided: "The mere skidding of a pickup truck, alone, is not evidence of negligence." CP at 78. The trial court declined to provide the instruction because the facts and issues in <u>Rickert</u> were substantially different from the present case:

> Court: . . . Well, Mr. Lockner [Hamilton's counsel], at the risk of error, I'm not going to include it because I frankly think it would be over instructing and frankly misleading the jury on facts here. And I don't even want to get close to commenting on evidence or suggesting that this is a fact in this case, so I'm not going to give it. I don't think that you're precluded from making an argument that there's no negligence, so I'm going to decline to instruct. Your exception has been noted.

RP (March 5, 2014) at 1255. The trial court and defense counsel agreed, however, that even without the instruction, he would still be able to argue his theory of the case:

> Mr. Lockner: I think it's a challenging and interesting factual issue compared to the law, and here's what I'm going to suggest.
> In Rickert-Geppert what you had is a vehicle that came along . . . and that vehicle was trying to operate prudently under the circumstances, reduced speed because of the weather conditions, and at that point encountered the ice. And you're correct. The movement of the vehicle was such it skidded on the ice with a result in a collision.
> In this case we have, again, a driver who arguably is proceeding prudently and encounters ice, only in this case, he's not aware of it . . . I think what it is is a comment, if you will, on whether or not that driver was confronted with something that if any other driver, a reasonable driver was confronted with, the same thing can happen.
> And—and so I . . .
> The Court: Right. So when I look at, then, the definition of negligence, I guess I'm trying to understand how you might be robbed of saying to the jury there was nothing else anybody could do in this situation, and what is the act of negligence?
> Mr. Lockner: That was my next step. I want to make the record because I agree. Reasonable minds might disagree on this, but I think, you know, as the defendant, to the extent that we put forth facts that support an inference supporting our case, you know, trying to meet my zealous duty, obviously, I want that instruction.

> But if the Court rules I don't get that instruction, I don't think I
> should be precluded from making any of the arguments at this point.
> The Court: Of course not. Of course not.

RP (March 5, 2014) at 1253-55.

The jury returned a verdict for Terrell, awarding her $1,454,500 in damages. Hamilton moved for a new trial or remittitur, essentially arguing that the trial court (1) improperly instructed the jury by stating the only way for Terrell to access Hamilton's insurance was through the lawsuit and (2) that it improperly declined to provide the Rickert instruction. Hamilton also argued that the verdict was grossly in excess of the evidence justifying the trial court's reduction of the general damages under RCW 4.76.030. The trial court denied Hamilton's motion, concluding that insurance was already an issue:

> The Ct. instructed the jury after Defense counsel raised the issue in jury selection and insisting on impeaching the Plaintiff with a statement to the insurance claim adjuster. The issue of insurance remained central to the case and the only way to address the question was through an instruction.

CP at 598. Hamilton appeals.

## ANALYSIS

### Standard of Review

Hamilton misstates the standard of review. He asserts that "the decision to give the jury an instruction informing it that the only way plaintiff could collect insurance was to sue her domestic partner is reviewed de novo." Br. of Appellant at 12.

Whether a jury instruction reflects an accurate statement of the law is reviewed de novo. Gregoire v. City of Oak Harbor, 170 Wn.2d 628, 635, 244 P.3d 924 (2010). But a trial court's decision regarding how to word an instruction or whether to give a

-7-

particular instruction is reviewed for an abuse of discretion. Douglas v. Freeman, 117 Wn.2d 242, 256, 814 P.2d 1160 (1991). Therefore, the trial court's decisions to (1) orally instruct the jury regarding Hamilton's insurance and (2) to decline the Rickert "skidding" instruction are subject to an abuse of discretion standard. "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

The Insurance Instruction

The trial court did not abuse its discretion when it orally instructed the jury that the only way Terrell "can access [Hamilton's] insurance is through this case." RP (Feb. 26, 2014) at 247. And even if this instruction was erroneous, Hamilton failed to show the instruction affected the verdict.

Whether the instruction was erroneous

Under the unique circumstances here, the trial court did not abuse its discretion in giving the oral instruction. "Jury instructions are sufficient when they allow counsel to argue their theory of the case, are not misleading, and when read as a whole properly inform the trier of fact of the applicable law." Keller v. City of Spokane, 146 Wn.2d 237, 249, 44 P.3d 845 (2002) (quoting Bodin v. City of Stanwood, 130 Wn.2d 726, 732, 927 P.2d 240 (1996)).

Hamilton primarily argues that the trial court's instruction was erroneous because it impermissibly injected the issue of insurance into the case, contrary to ER 411 and relevant case law. ER 411 provides: "Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or

-8-

otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness." ER 411. Hamilton also cites two cases supporting the proposition that evidence of insurance coverage is generally inadmissible in personal injury cases. See Lyster v. Metzger, 68 Wn.2d 216, 223-24, 412 P.2d 340 (1966); Carle v. Earth Stove, Inc., 35 Wn. App. 904, 906, 670 P.2d 1086 (1983).

But Hamilton ignores a fundamental requirement of ER 411—that evidence of insurance is prohibited only "upon the issue whether the person acted negligently . . . ." ER 411. Indeed, evidence of insurance may be admissible "when offered for another purpose . . . ."[2] ER 411; see also Kubista v. Romaine, 87 Wn.2d 62, 68, 549 P.2d 491 (1976) ("Moreover, even when the issue of liability is present, rules of evidence which prohibit the . . . existence of liability insurance do not prevent such evidence being introduced if admissible for another proper purpose."). Both Lyster and Carle—upon which Hamilton relies—acknowledge that evidence of insurance is prohibited regarding liability, but neither case prohibits such evidence if it is submitted for a proper purpose. See Lyster, 68 Wn.2d at 223 ("the fact that the defendant carries liability insurance is entirely immaterial on the main issue of liability . . . ."); see Carle, 35 Wn. App. at 906 (noting that the evidence of insurance could be admitted to demonstrate that a third party controlled the action against defendant under its subrogation rights).

Here, the trial court informed the jury about Hamilton's insurance for a narrowly drawn purpose unrelated to whether Hamilton acted negligently. The trial court recognized the jury's confusion surrounding why someone might sue her spouse and

---

[2] Hamilton neglects to quote the second sentence of the rule in his brief.

concluded the instruction was necessary to resolve that confusion. Although this purpose may not fall squarely under one of the proper purposes listed under ER 411, (". . . proof of agency, ownership, or control, or bias or prejudice of a witness") the list is not exclusive. ER 411. For instance, in Kubista, the court concluded that a statement made by an insurance adjuster to the plaintiff was admissible because it was "relevant on the vital issue of whether plaintiff had a duty to mitigate damages." Kubista, 87 Wn.2d at 69. The trial court could have determined that helping the jury understand "why we're here" was a proper purpose justifying the instruction. RP (Feb. 25, 2014) at 221; see Dickerson v. Chadwell Inc., 62 Wn. App. 426, 433, 814 P.2d 687 (1991) ("When a trial court evaluates occurrences during trial and their impact on the jury, great deference is afforded the trial court's decision.").

Further, the trial court tailored the instruction to ensure the jury would not rely on Hamilton's insurance for an improper purpose. When the trial court discussed its reasoning for the insurance instruction with counsel, it emphasized the need to clarify that the jury not consider the instruction for an improper purpose:

> I want this jury to focus on the facts and the evidence, and I believe an instruction is necessary to remove actually the taint of insurance or a third payer. At the risk of error, I'm orally instructing the jury and will instruct them at the end of the case, as well, that the fact that there is insurance shall not be considered in making or declining to make an award.

RP (Feb. 26, 2014) at 236. Accordingly, the trial court instructed the jury both at the beginning and at the end of the trial that insurance evidence could not be considered

when determining liability or damages.[3] The trial court also included jury instruction 16 in its written jury instructions, quoted above, which included a verbatim recitation of WPI 2.13[4] on insurance and collateral sources. When considered as a whole, the trial court's instructions informed the jury of Hamilton's insurance, but they also expressly and unequivocally prohibited the jury from relying on that information for any improper purpose. The trial court did not abuse its discretion under the circumstances presented here.

Prejudice

But even if the trial court's insurance instruction was erroneous, Hamilton failed to demonstrate prejudice. "Even if an instruction is misleading, it will not be reversed unless prejudice is shown." Keller, 146 Wn.2d at 249. An erroneous instruction is harmless if it did not affect the outcome of the case. Blaney v. Int'l Assoc. of Machinists and Aerospace Workers, Dist. No. 160, 151 Wn.2d 203, 211, 87 P.3d 757 (2004). Due

---

[3] When the trial court informed the jury that Hamilton had insurance, it immediately stressed that the jury could not consider that fact for any improper purpose:
> Because your sole focus will be the factual issues that this court gives to you for consideration, I wish to advise you at this time that Mr. Hamilton is insured and the only way Ms. Terrell can access insurance is through this case. The fact that there is insurance shall not be considered in any way in the way that you view the facts and shall not be considered in any award of damages if any are awarded.

CP 247 (emphasis added).

[4] A comment following WPI 2.13 suggests that insurance often is injected into jurors' minds:
> Because jurors sometimes speculate about insurance even when the issue has not been directly raised during trial, the instruction was changed in 2002 to allow the court to address the issue whenever the court deems it appropriate.

WPI 2.13, comment (emphasis added). The trial court deemed it appropriate to address insurance under the circumstances here.

to the presence of insurance throughout the trial and the trial court's other jury instructions, Hamilton cannot show prejudice.

As discussed above, the issue of insurance arose several times during the trial. Terrell moved to exclude a statement she made to Hamilton's insurance adjuster. Hamilton opposed the motion even though he conceded that admitting the statement would "open the door" to evidence that Hamilton was insured. RP (Feb. 25, 2014) at 47-57. Hamilton knew that introducing the statement might alert the jury that he was insured. He nevertheless mentioned it during opening statement, and during Terrell's cross-examination.

The trial court provided the oral insurance instruction in part because of its decision to admit Terrell's statement to the insurance adjuster. When it originally discussed the possibility of the oral insurance instruction with counsel, the trial court suggested that the instruction would be appropriate in light of its rulings on motions in limine: "What I'm thinking, given my prior rulings, which I'm not changing . . . Is some sort of advance instruction that puts it out there . . ." CP at 221 (emphasis added). The trial court acknowledged that, because of its prior rulings on motions in limine, the jury would already know that Hamilton was insured. Therefore, the oral insurance instruction would not improperly taint the trial with any information the jury otherwise lacked. Insurance also arose during voir dire. Several jurors discussed the issue of insurance without being specifically asked about it. Further, Hamilton's counsel asked the juror's several questions related to insurance.

The trial court's jury instructions also eliminated any potential prejudice by prohibiting the jury from considering insurance evidence for an improper purpose. As

discussed above, the trial court reminded the jury at the beginning and the end of trial that insurance evidence could not be considered for liability or damages. The trial court also included jury instruction 16, quoted above. During closing argument, Hamilton's counsel emphasized this instruction and reminded the jury that the trial court's reference to Hamilton's insurance served a limited purpose:

> And you were told something in this case that you're normally not told, and that is that there's insurance, and that that was told to you for the sole purpose of understanding why Ms. Terrell would bring a lawsuit against somebody that she entered into a domestic partnership with approximately a year and half after this accident occurred.
> But if you'd be so kind as to turn your attention to Instruction No. 16. Number 16, the Judge just read it to you, but I want to tell you something. We talked about this in voir dire. I brought this up for a reason. The reason you're given this instruction is you don't know what has or hasn't happened prior to this case coming to court. You don't know and you're not supposed to know and you're not going to know because that would violate your oath and responsibility to resolve the big issues in this case: Whose fault is it and what is it worth.
> And I'm going to submit to you that in that language the reason it's in there is to make sure you follow your oath as jurors because if you don't, there may be unintended consequences that you can't even foresee.
> We talked about in voir dire what if it's 50/50, but if you know that there's insurance, does that make it easier to make a decision? You can't do that.

RP (March 5, 2014) at 1292. Under these circumstances, the trial court's insurance instruction did not affect the verdict. Jurors are presumed to follow the court's instructions. Diaz v. State, 175 Wn.2d 457, 474, 285 P.3d 873 (2012) ("Washington courts have, for years, firmly presumed that jurors follow the court's instructions.").

Hamilton's argument, essentially, is that the trial court injected the issue of insurance into the case and thereby irreversibly tainted the jury. This assertion is not supported by the record. Hamilton arguably "injected" the insurance issue when he

-13-

opposed Terrell's motion to exclude the statement to the insurance adjuster and then used that statement during trial. The trial court's instruction did not taint the jury any more than the other numerous instances during trial when the issue of insurance arose without objection. The oral instruction was also specifically tailored to prohibit the jury from considering insurance evidence for an improper purpose. Taken as a whole, the court's instructions—along with Hamilton's closing argument—eliminated any potential prejudice. Hamilton points to nothing in the record indicating the jury disregarded the court's instructions limiting the use of insurance evidence.

Hamilton nevertheless contends that the insurance instruction was "exploited and reinforced throughout the trial."[5] Br. of Appellant at 15. To support this argument, Hamilton points to Terrell's questioning of witnesses at trial: "On several occasions, Terrell's counsel sought to drive a wedge between defense counsel and Hamilton with the implication that defense counsel was solely aligned with Hamilton's insurance company." Br. of Appellant at 15. This argument mischaracterizes the record.[6] The record fails to support Hamilton's assertion that Terrell improperly exploited either the existence of insurance or the court's oral insurance instruction.

---

[5] Hamilton's briefing discusses instances of the alleged "exploitation" of insurance by Terrell during trial. But Hamilton did not object at trial to any of this evidence that he now complains about. And the trial court sustained the one objection he made at trial.

[6] Citing RP (March 5, 2014) at 1292, Hamilton claims that "Terrell's counsel also reminded the jury about the insurance instruction one last time." Br. of Appellant at 17. This misstates the record. The passage Hamilton cites referencing insurance is from his own closing argument, not Terrell's.

-14-

The Rickert Instruction

Hamilton also contends the trial court abused its discretion when it declined to provide the Rickert instruction. Hamilton cites no authority requiring the instruction and he was able to argue his theory of the case without it. As discussed above, trial courts retain broad discretion regarding whether to give a particular instruction. Douglas, 117 Wn.2d at 256; see also Stiley v. Block, 130 Wn.2d 486, 498, 925 P.2d 194 (1996) ("Thus a trial court's refusal to give a requested instruction is reviewed only for abuse of discretion.").

Here, the trial court did not abuse its discretion when it declined to provide the Rickert instruction on grounds the instruction was improper. First, jury instructions framed in the negative—like the Rickert instruction—are disfavored because they can be misleading. In Rickert, the court concluded that an instruction phrased in the negative "would more likely tend to confuse, than aid, the jury." Rickert, 64 Wn.2d at 356. Second, the Rickert instruction arguably slants the instructions towards the defense's theory of the case. See Watson v. Hockett, 107 Wn.2d 158, 161, 727 P.2d 669 (1986) ("modern jury instruction practice . . . is aimed at avoiding slanted or argumentative instructions . . . ."). In Watson, the court considered an instruction that read: "A physician or surgeon is not liable for an *honest* error of judgment . . ." Watson, 107 Wn.2d at 165 (quoting Miller v. Kennedy, 91 Wn.2d 155, 160 n.4, 588 P.2d 734 (1978)). The court concluded that the instruction was improper because the use of the word "honest" imparted "an argumentative aspect into the instruction . . . ." Watson, 107 Wn.2d at 164. The court continued, stating that such instructions "tend to muddle the jury's understanding of the burden imposed upon a plaintiff in a malpractice action."

Watson, 107 Wn.2d at 165 (quoting Teh Len Chu v. Fairfax Emergency Med. Assocs., 223 Va. 383, 386, 290 S. E. 2d 820 (1982)). The instruction here—"The mere skidding of a pickup truck, alone, is not evidence of negligence," CP at 78—potentially imparts a similarly improper argumentative slant. On this point the trial court commented: "And I don't even want to get close to commenting on evidence or suggesting that this is a fact in this case, so I'm not going to give it." RP (March 5, 2014) at 1255.

Even if the instruction is proper, Hamilton failed to cite any authority demonstrating that the trial court was required to give the instruction. In Rickert, the court concluded that the trial court did not err when it included an instruction identical to the one Hamilton proposed here. Rickert, 64 Wn.2d at 355. Because the instruction was given in a case, does not compel its use in a different case. We decline to hold that the Rickert instruction must be given whenever it is requested.

Hamilton cites three cases supporting the proposition that "Washington courts have granted new trials in cases in which properly worded and relevant instructions were not given to the jury." Br. of Appellant at 22; Rowe v. Safeway Stores Inc., 14 Wn.2d 363, 128 P.2d 293 (1942); Cresap v. Pac. Inland Navigation Co., 78 Wn.2d 563, 478 P.2d 223 (1970); Izett v. Walker, 67 Wn.2d 903, 410 P.2d 802 (1966). None of these cases are applicable here. In Rowe, the trial court erred because it denied an instruction that explained a statutory duty imposed on the defendant that was directly at issue regarding whether he acted negligently. Rowe, 14 Wn.2d at 368. In Cresap, failure to provide an instruction deprived the plaintiff of the right to fully argue his theory of the case. Cresap, 78 Wn.2d at 567. In Izett, denying an instruction resulted in a failure to adequately explain the elements necessary to prove the claim. Izett, 67

-16-

Wn.2d at 908 ("There is nothing in the instructions given to the jury regarding defendant's negligence to indicate what he was doing that proximately caused the accident in the eyes of the law.").

By contrast, the instructions given here constituted accurate statements of the law and allowed Hamilton to argue his theory of the case.[7] See Keller, 146 Wn.2d at 249 ("Jury instructions are sufficient when they allow counsel to argue their theory of the case, are not misleading, and when read as a whole properly inform the trier of fact of the applicable law.") (quoting Bodin, 130 Wn.2d at 732).

The record shows that Hamilton argued his theory of the case under the court's instructions. Hamilton's defense was essentially that he drove onto a patch of black ice and slid off of the road. He claimed that this was not negligent, because he acted as any ordinary person would have if confronted with black ice. Hamilton explained this defense when he argued that the trial court should include the instruction. At the time, both the trial court and Hamilton agreed that he would be able to make the same argument even without the instruction. Under the instructions given, Hamilton was free to argue that he acted as any reasonable person would under the circumstances, which may have included black ice. Hamilton's argument asserted precisely that during closing:

> Now, you're sitting there probably some, maybe all of you are going, oh, come on. A guy hits ice. Goes off the roadway. How's it not his fault? Go back to the reasonable person standing.
> Let me submit to you today, a rainy day, a terrible day on Interstate 5. Sixty-mile-an-hour speed limit. How many people are still

---

[7] Hamilton never argues that the instructions, as given, were legally insufficient. He only claims that the Rickert instruction was required because it is an accurate statement of the law and is relevant to the case.

going 60 miles an hour or 65 miles an hour? There is a percentage of drivers who are, and I'm going to submit that's unreasonable under the existing traffic conditions.

What about those folks, though, who are going a little bit slower, 50 miles an hour? 40 miles an hour? What's reasonable? It depends. What do we have or what do you know in this case?

Well, you know, it was raining when they left Quinault Casino. You know they were heading back to town on Highway 12. You know that at some point it started to snow, but you also know the roadways were wet. There was no ice on the roadways. No evidence of ice on the roadways. Nothing.

Now, they hit what's been characterized as black ice. A sudden event. They go off the road and hit a tree.

Under those type of existing traffic conditions, what does a reasonable driver do? Wet roads. It's snowing. Drive up to the pass. Find out. People still go 50, 60, miles an hour, but what should they do? They should reduce their speed to the point that it's consistent with the traffic conditions, and I'm going to submit to you that 30 miles an hour on a wet roadway would be reasonable under the circumstances, and that Mr. Hamilton was confronted by something he didn't expect to be confronted with, which was black ice, and that caused the accident.

We talked a little bit in voir dire about the deer that jumps out of the woods. All right. Driving in a forested area. There's even signs that say deer crossing. You know, there's deer in the woods.

Is that your fault that you are confronted by one suddenly and unexpectedly? You could guess that maybe there's some that could happen. You might guess there may be ice down the roadway. But if you're driving in the rain and it just starts to snow and the roadways are wet and you reduce your speed to 30 miles an hour, as triers of fact, ask yourself is that reasonable under the then-existing traffic conditions.

Now, if you believe that's reasonable, you're done. You go to that jury verdict form, and it's got the question at the end of it. And it says: Was the defendant negligent? Was he at fault? Did he breach his duty?

. . .

. . . I'm going to submit to you that if you believe 30 miles an hour on a wet roadway under those conditions was reasonable, as I indicated, we're done.

RP (March 5, 2014) at 1298-1300. Hamilton argued his theory of the case—that he

acted reasonably under the traffic conditions and unfortunately drove onto black ice.

Because the jury instructions were accurate and allowed Hamilton to argue his theory of

-18-

the case, Hamilton suffered no prejudice. Keller, 146 Wn.2d at 249. The trial court acted well within its discretion when it declined to give the Rickert instruction.

## Motion for New Trial or Remittitur

The trial court did not abuse its discretion when it denied Hamilton's motion for a new trial or remittitur because its jury instructions were not erroneous and the jury's verdict was supported by substantial evidence.

### Motion for new trial

Hamilton contends that the trial court's decisions to (1) orally instruct the jury regarding Hamilton's insurance and (2) decline to provide the Rickert instruction warrant a new trial. As discussed above, the trial court acted within its discretion when it provided the oral insurance instruction and declined to provide the Rickert instruction. Accordingly, the trial court properly denied Hamilton's motion for a new trial for failure to show a manifest abuse of discretion. See Feeley v. Butterworth & Sons, 42 Wn.2d 837, 844, 259 P.2d 393 (1953) ("Before we will overrule the trial court for its refusal to grant a new trial . . . we must be able to say that the trial court has manifestly abused its discretion.").

### Remittitur

Hamilton also argues that the jury award was excessive. Because the award, is supported by substantial evidence, the trial court properly denied Hamilton's motion for remittitur.

"An appellate court will not disturb an award of damages made by a jury unless it is outside the range of substantial evidence in the record, or shocks the conscience of the court, or appears to have been arrived at as the result of passion or prejudice."

Bunch v. King County Dept. of Youth Services, 155 Wn.2d 165, 175, 116 P.3d 381 (2005) (quoting Bingaman v. Grays Harbor Community Hosp., 103 Wn.2d 831, 835, 699 P.2d 1230 (1985)). Washington courts "strongly presume the jury's verdict is correct." Bunch, 155 Wn.2d at 179. Further, a "trial court's denial of a remittitur strengthens the verdict." Bunch, 155 Wn.2d at 180.

Hamilton failed to show that remittitur was required here. First, the award was supported by substantial evidence.[8] At trial, several doctors, including various spinal, neurological, and surgical specialists, testified to the extent of Terrell's injuries. Following the accident, Terrell underwent several major medical procedures, including spinal surgery. Terrell lost significant basic functions and still endures chronic pain. Terrell has a permanently disfigured spine and must wear a custom-made brace to accommodate the deformity. One doctor testified that, due to traumatic brain injury, Terrell lacks basic memory and organizational skills. Terrell also suffers from post-traumatic stress disorder. Many of these maladies may get worse over time. Given the extensive testimony on Terrell's injuries, the jury's award is supported by substantial evidence. Hamilton suggests that the large amount of the award, on its own, indicates that it is unsupported by substantial evidence. The jury's award is much less than what Terrell actually requested. Terrell calculated her damages to a total of $5,200,000. The jury's award was substantially less—$1,454,500.

---

[8] Hamilton makes minimal effort to explain how the award is unsupported by substantial evidence. He simply notes that the non-economic damages vastly outweigh the economic damages. He asserts the large award can only be explained as "punitive," but fails to identify specifically why the award lacked sufficient evidentiary support. Br. of Appellant at 29.

Hamilton contends that remittitur was required because the excessive award is evidence that the jury acted out of passion or prejudice to punish the insurance company. But for passion and prejudice to warrant remittitur, it must be "unmistakable." Bunch, 155 Wn.2d at 179 (quoting RCW 4.76.030):

> The damages, therefore, must be so excessive as to strike mankind, at first blush, as being, beyond all measure, unreasonable and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice, or corruption. In short, the damages must be flagrantly outrageous and extravagant, or the court cannot undertake to draw the line; for they have no standard by which to ascertain the excess.

Bunch, 155 Wn.2d at 179 (quoting Kramer v. Portland-Seattle Auto Freight, Inc., 43 Wn.2d 386, 395, 261 P.2d 692 (1953)). The jury's award is not so excessive as to demonstrate this level of prejudice. As discussed above, the jury instructions specifically informed the jury not to consider insurance when determining its award. The trial court acted well within its discretion when it denied Hamilton's motion for remittitur.

## CONCLUSION[9]

For the reasons discussed above, we find no error and affirm the judgment on the verdict.

WE CONCUR:

_Spearman, C.J._

_Dwyer, J._

_Cox, J._

---

[9] We deny Terrell's motion to supplement clerk's papers filed on May 27, 2015.